# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 6, 2010 Session

## BILLIE GAIL HALL, as Surviving Spouse and Administratrix of the Estate of BILLY R. HALL, Deceased v. DOUGLAS B. HAYNES, JR., M.D. ET AL.

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Dyer County**
**No. 05-96     Lee Moore, Judge**

---

**No. W2007-02611-SC-R11-CV - Filed August 26, 2010**

---

In this medical malpractice case, we are asked to determine whether various employees of a medical corporation were agents properly authorized by appointment to receive service of process on behalf of the corporation and/or one of its physician employees. We hold that none of the individuals who accepted service in this case were agents authorized by appointment to receive service of process on behalf of either the corporation or the individual physician. With specific reference to the attempted service of the amended complaint, we hold that the authority to sign for and receive certified mail does not, on its own, confer the authority to accept service of process. Therefore, we affirm the judgment of the Court of Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed and Case Remanded to the Circuit Court for Dyer County**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., and GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Charles M. Agee, Jr., Dyersburg, Tennessee, for the appellant, Billie Gail Hall, as Surviving Spouse and Administratrix of the Estate of Billy R. Hall, Deceased.

Marty R. Phillips and Ashley D. Cleek, Jackson, Tennessee, for the appellees, Douglas B. Haynes, Jr., M.D. and MedSouth Healthcare, P.C.

**OPINION**

Factual and Procedural Background

On August 5, 2005, Billy R. Hall and Billie Gail Hall (collectively, "the Halls") filed a civil action in Dyer County Circuit Court against Douglas B. Haynes, Jr., M.D. and MedSouth Healthcare, P.C. ("MedSouth") (collectively, "Defendants") alleging medical malpractice regarding Defendants' treatment of a condition that was first discovered on February 23, 2005.[1]  That same day, the Dyer County Circuit Clerk issued two summonses, one addressed to Dr. Haynes in his own name and the other addressed to MedSouth by and through its registered agent, Stevens Melton, M.D.  On August 9, Constable Dennis Peckenpaugh went to MedSouth's clinic in Dyersburg, which was also Dr. Haynes's place of employment, in order to serve Defendants with process.  According to the testimony of David Alred, MedSouth's administrator, when Peckenpaugh walked into MedSouth's clinic, he would likely first see MedSouth employees, including customer service agents, at the front desk area.

Brenda Enochs signed the summons addressed to Dr. Haynes.  In her deposition, Enochs testified that she was employed at that time in MedSouth's customer service department, where she checked in patients and assisted with billing inquiries. Besides having some papers placed before her that she was told to sign, Enochs testified that she had no recollection of her conversation with Peckenpaugh.[2]  Enochs testified that she routinely signed for subpoenas for medical records.  In fact, when she signed the Haynes summons, Enochs thought that she was actually signing for one such medical records request.  Enochs testified that she would not have signed the summons if Peckenpaugh had explained that he was serving a lawsuit.

Upon discovering that the served documents were not, in fact, a medical records request, Enochs gave them to her supervisor, Cindy Hill.  Although Enochs did not know what Hill did with the documents, Alred testified that Dr. Haynes informed Alred about the filing of the lawsuit shortly after Enochs signed for the documents.

---

[1] According to the underlying allegations, which are not relevant to the disposition of this case, Dr. Haynes, a primary care physician who saw Mr. Hall for annual physicals and other office visits, was negligent in failing to diagnose Mr. Hall's colon cancer.  By the time that other physicians made the diagnosis, Mr. Hall's cancer had allegedly reached Stage IV, and his life expectancy was approximately twelve (12) months.  MedSouth was alleged to be vicariously liable under the doctrine of respondeat superior.  The record does not reflect the exact date of Mr. Hall's death, but, at least as of June 22, 2007, Mrs. Hall ("Plaintiff") was listed as "Surviving Spouse and Administratrix of the Estate."

[2] Peckenpaugh was not deposed.

Michelle Pruitt, a customer service agent who had the same job tasks as Enochs, signed the summons for MedSouth.[3] Pruitt testified that Peckenpaugh laid the summons on the front desk and asked her to sign for it. Pruitt signed the summons at Peckenpaugh's request but did not know what she was signing for. She then placed the documents in Dr. Melton's mailbox because the documents had his name on them. Pruitt ordinarily signed only for medical records but not for other mail. She testified that, if she had known that Peckenpaugh was serving a lawsuit, she would have called for someone else because she "would not have known [what to do] about a lawsuit."

On August 25, 2005, the Halls filed an amended complaint.[4] The Halls' counsel attempted to serve a new summons and the amended complaint on Dr. Haynes and MedSouth by certified mail, return receipt requested. The process documents for Dr. Haynes were addressed to "Douglas B. Haynes, Jr., M.D." at the street address for MedSouth's clinic. The process documents for MedSouth were addressed to "MedSouth Healthcare, P.C., Registered Agent: Stevens Melton, M.D.," also at the clinic's street address. The postal carrier delivered the certified mail to MedSouth's clinic, where Debbie Funderburk, an accounts payable clerk in MedSouth's administrative department, received the envelopes and signed the return receipts for both Defendants.[5] Funderburk did not check the "Agent" or "Addressee" boxes on either return receipt. Funderburk then took the envelopes to the mail room, where she placed Dr. Haynes's process in Dr. Haynes's box and MedSouth's process in Dr. Melton's box. Funderburk testified that, to her knowledge, each individual doctor or his nurse would retrieve the mail from the doctor's mailbox.[6]

---

[3] When Pruitt was asked why she would sign for MedSouth and Enochs would sign for Dr. Haynes, Pruitt testified that she worked on the pediatric side and that Enochs worked on the internal side. Pruitt testified that she and Enochs must have had some conversation with Constable Peckenpaugh to explain who would sign for which documents. Alred testified that Enochs and Pruitt worked in the same vicinity, but otherwise he did not know how different people ended up signing for two sets of process documents delivered by the same person.

[4] Besides specifying February 23, 2005 as the date that the Halls discovered the injury caused by Defendants' alleged negligence, the amended complaint otherwise incorporated the entirety of the allegations of the original complaint.

[5] Funderburk was not asked in her deposition about any specific details of what the mail carrier said to her, or vice versa, upon delivery of the process documents in this case. The mail carrier was not deposed.

[6] In several cases Alred provided conflicting testimony regarding who physically placed the summons and complaint in the mailbox of the recipient physician after staff signed for those documents. The precise identity of who placed the documents in each physician's mailbox is ultimately immaterial because the parties do not dispute the identity of who accepted service of process in each instance or the fact that Defendants ultimately received actual notice of both complaints.

Concerning the delivery of certified mail generally, Funderburk testified that "[t]he postman walks in and whoever is the first person in administration he finds he just says, here, I need you to sign this." Funderburk was one of at least four employees in administration who could have signed the return receipt for certified mail. Funderburk testified that her supervisor, Chief Financial Officer Sheila Curtis, was aware of the fact that administrative employees signed for certified mail.

Enochs, Funderburk, and Dr. Haynes all testified that Enochs and Funderburk were neither employed by Dr. Haynes nor authorized to accept service of process on his behalf. Pruitt, Funderburk, Alred, and Dr. Melton all testified that Pruitt and Funderburk were not officers or managing agents of MedSouth nor otherwise authorized agents to accept service of process on its behalf. According to Alred's testimony, the positions held by Enochs, Pruitt, and Funderburk were "secretarial or clerical in nature" and lacked "any management or supervisory responsibilities."

Dr. Melton was MedSouth's registered agent during his tenure as the company's president from 2002 until the fall of 2006. He testified that he could recall one instance in that period when he was served with a lawsuit against MedSouth. At other times, Dr. Melton conceded that customer service agents signed for lawsuits against MedSouth, even though they lacked the actual authority to accept service of process on MedSouth's behalf. Dr. Melton could not name the employees who worked in customer service. With regard to certified mail, Dr. Melton could recall one occasion when a letter was brought to him for signature. On other occasions the front office staff signed for his certified mail. He explained that it was "preferable" to bring the mail back for him to sign but he "kn[e]w that d[id] not happen all the time."

During his tenure for slightly more than a decade as MedSouth administrator, Alred recalled fewer than half a dozen suits against MedSouth or one of its physicians. Alred testified that he could recall signing for a summons for a malpractice lawsuit against MedSouth during his tenure as administrator. When asked whether it was a more common practice for someone besides Dr. Melton or himself to sign for a summons, Alred testified: "If the customer service or front desk people are aware of what they're signing for typically I would be called. . . . If they are not fully aware of what they are signing then they are going to sign it."

As for the delivery of certified mail, Alred testified that someone in the administrative office, such as Funderburk, would generally sign the return receipt. Consistent with Funderburk's testimony, Alred stated that, when return receipts needed to be signed, the mail carrier would look for "[w]hoever is available in the front office." Alred testified that, in signing the return receipt for process on the amended complaint, Funderburk "would have

had no idea what she was signing for." Alred was not asked about and did not volunteer what procedure would have been followed if a certified letter with receipt restricted to a particular person was delivered.

Defendants do not dispute that they actually received notice of the lawsuit, as they ultimately obtained both copies of the summons and both complaints. Once Alred knew about the lawsuit, he contacted MedSouth's malpractice insurance carrier.

Defendants filed their answer on September 12, 2005. Defendants asserted the following as their "First Defense":

> Defendants plead the defense of improper service and insufficiency of process. They were not served as required by [Tennessee Rule of Civil Procedure] 4. The Summons, Complaint, and First Amended Complaint were not delivered personally to Dr. Haynes or the authorized agent for service of process for MedSouth Healthcare, P.C. Consequently, service is not effective.

Defendants did not file a motion to dismiss, and Plaintiff did not attempt new service. The parties conducted discovery on the issue of service. On March 15, 2007, approximately eighteen months after filing the answer, Defendants moved for summary judgment. Defendants argued that the Halls did not timely serve them, see Tenn. R. Civ. P. 3, because the Halls did not serve individuals authorized to accept service on behalf of Haynes or MedSouth, see id. 4.04(1), (4). Accordingly, Defendants maintained that the lawsuit was time-barred under the one-year statute of limitations for malpractice actions. See Tenn. Code Ann. § 29-26-116(a) (2000). Plaintiff did not dispute most of the facts material to the motion, but asserted that Defendants were not entitled to judgment as a matter of law.

The trial court denied Defendants' motion, relying on Boles v. Tennessee Farmers Mut. Ins. Co., No. M1999-00727-COA-R3-CV, 2000 WL 1030837 (Tenn. Ct. App. July 27, 2000). The trial court held that Enochs, Pruitt, and Funderburk were authorized to receive service of process on Defendants' behalf. Defendants then moved for an interlocutory appeal of the order denying the motion for summary judgment, which the trial court granted. The Court of Appeals granted the interlocutory appeal and reversed and remanded the action for entry of summary judgment for Defendants. The intermediate court held that the Halls did not effectuate service of process on Defendants either by in-person delivery to Enochs and Pruitt or by the delivery of certified mail signed for by Funderburk. Hall ex rel. Hall v. Haynes, No. W2007-02611-COA-R9-CV, 2009 WL 782761, at *8, 15 (Tenn. Ct. App. Mar. 26, 2009). The Court of Appeals reasoned that Enochs, Pruitt, and Funderburk did not have express actual authority or implied authority to accept service on behalf of Dr. Haynes or MedSouth. The intermediate court further concluded that Boles was erroneous "to the extent

-5-

that [it] may be read as holding that the ability to sign for certified mail, in and of itself, equates to authority to receive service of process." Id. at *13.

We accepted Plaintiff's application for permission to appeal. As she did below, Plaintiff argues that Enochs and Pruitt were authorized to accept in-person service on behalf of Dr. Haynes and MedSouth, respectively, and that Funderburk was authorized to accept service by certified mail on behalf of both Defendants. Furthermore, Plaintiff contends for the first time that, after first raising the affirmative defense of insufficiency of process in their September 2005 answer, Defendants waived the right to assert this procedural defense by actively litigating the case until March 2007, when they filed their dispositive motion for summary judgment.

## Standard of Review

This case has been appealed from the trial court's denial of summary judgment to Defendants. Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The burden of production is on the party moving for summary judgment. See Martin v. Norfolk S. Ry. Co., 271 S.W.3d 76, 83 (Tenn. 2008). To satisfy this burden of production, Defendants must either produce or identify evidence "that affirmatively negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." See Mills v. CSX Transp., Inc., 300 S.W.3d 627, 631 (Tenn. 2009). Courts "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." Blair v. W. Town Mall, 130 S.W.3d 761, 768 (Tenn. 2004). No genuine issue of material fact exists if the undisputed facts and inferences drawn in the nonmoving party's favor "permit a reasonable person to reach only one conclusion"—that is, the moving party is entitled to judgment as a matter of law. Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000).

Because summary judgment is a matter of law, we review the trial court's decision de novo with no presumption of correctness. Bailey v. Blount County Bd. of Educ., 303 S.W.3d 216, 226 (Tenn. 2010). As the parties do not disagree concerning any material fact in the case, the issue presented is purely a question of law.

## Analysis

This case requires us to interpret provisions of the Tennessee Rules of Civil Procedure. These rules are promulgated by this Court and approved by the General

Assembly, pursuant to this Court's "inherent power to promulgate rules governing the practice and procedure of the courts of this state." State v. Mallard, 40 S.W.3d 473, 481 (Tenn. 2001) (citing State v. Reid, 981 S.W.2d 166, 170 (Tenn. 1998)). These rules have "the force and effect of law." Frye v. Blue Ridge Neurosci. Ctr., P.C., 70 S.W.3d 710, 713 (Tenn. 2002) (quoting Crosslin v. Alsup, 594 S.W.2d 379, 380 (Tenn. 1980)). Tennessee law directs that Rule 4.04, the key provision at issue in this case, is to be strictly construed. E.g., Wallace v. Wallace, No. 01A01-9512-CH-00579, 1996 WL 411627, at *2 (Tenn. Ct. App. July 24, 1996) (quoting Tabor v. Mason Dixon Lines, Inc., 264 S.W.2d 821, 822-23 (Tenn. 1953)).

I. Personal Service of Process Upon Defendants
Within the State of Tennessee

A. On Individuals

Tennessee Rule of Civil Procedure 4.04(1), which governs the personal service of process on individual defendants in this state, provides as follows:

The plaintiff shall furnish the person making the service with such copies of the summons and complaint as are necessary. Service shall be made as follows:

(1) Upon an individual other than an unmarried infant or an incompetent person, by delivering a copy of the summons and of the complaint to the individual personally, or if he or she evades or attempts to evade service, by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, whose name shall appear on the proof of service, or by delivering the copies to an agent authorized by appointment or by law to receive service on behalf of the individual served.

The language of this rule makes clear that "the preferred method of service upon an individual . . . is clearly by delivery of the summons and complaint to the defendant personally." Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 2-3(d), at 2-26 (2d ed. 2004). Nevertheless, personal service may also be effected upon an individual via a properly authorized agent. In any event, however, actual notice of the lawsuit is not "a substitute for service of process when the Rules of Civil Procedure so require." Frye, 70 S.W.3d at 715; accord LSJ Inv. Co. v. O.L.D., Inc., 167 F.3d 320, 322 (6th Cir. 1999).

It is undisputed in this case that Constable Peckenpaugh did not serve process on Dr. Haynes personally. Rather, he delivered to Enochs the summons addressed to Dr. Haynes. Whether this constituted service of process upon Dr. Haynes hinges upon whether Enochs was "an agent authorized by appointment or by law to receive service on behalf of" Dr. Haynes.

In the workplace context, service is not effective when another employee whom the individual defendant has not appointed as an agent for service of process nonetheless accepts process on the defendant's behalf. In Basham v. Tillaart, No. M2002-00723-COA-R3-CV, 2003 WL 21780974 (Tenn. Ct. App. July 31, 2003), the plaintiff served both individual defendants through the Tennessee Secretary of State at the defendants' nursery business in Ontario, Canada. The international mail return receipts were signed by a general laborer at the nursery whose ordinary duties consisted of outside farm labor rather than office work. In the laborer's affidavit, she testified that a postman approached asking her to sign for some mail, and "[i]n the bustle of activity prevailing at the moment," she signed the return receipts. Id. at *2. Although international law governed the question of sufficiency of process and service was insufficient under the applicable treaty, the Court of Appeals went on to state, "[p]laintiff's attempted method for service of process even fails to satisfy the standard established by the Tennessee Rules of Civil Procedure for service *within the state*." Id. at *5. In other words, if the defendants had worked in Tennessee and process had been served on someone in the general laborer's position, that service would have been insufficient. The court explained that, under Rule 4.04(1), "personal service is the preferred method under Tennessee law" and concluded that the rule does not "permit[] a plaintiff to serve process by sending documents to an individual's place of business, thereafter to be receipted for by an employee who is not an authorized agent for service of process." Id.

The reasoning in Basham is consistent with the holdings of decisions from other jurisdictions construing similarly worded provisions in their rules of procedure. See Babb v. Bridgestone/Firestone, 861 F. Supp. 50, 51-52 (M.D. Tenn. 1993); Adams v. Gluckman, 359 S.E.2d 710, 711 (Ga. Ct. App. 1987); Cooley v. Brawner, 881 So. 2d 300, 302-03 (Miss. Ct. App. 2004); Cook v. Polineni, 967 S.W.2d 687, 693 (Mo. Ct. App. 1998). In these latter three medical malpractice actions, the court held that an individual physician was not effectively served by leaving the process documents at the physician's place of business with a receptionist or office manager. That service was insufficient because the recipient was not an agent authorized by appointment to receive service of process.

The phrasing of the rule in Tennessee and other jurisdictions "was intended to cover the situation where an individual actually appoints an agent for the purpose of receiving service." 62B Am. Jur. 2d Process § 216 (2005). A principal may expressly give actual authority to the agent in direct terms, either orally or in writing. Rubio v. Precision

Aerodynamics, Inc., 232 S.W.3d 738, 742-43 (Tenn. Ct. App. 2006). Implied authority, by contrast, "embraces all powers which are necessary to carry into effect the granted power, in order to make effectual the purposes of the agency." Id. at 743. Implied authority that the principal has actually conferred on the agent can be circumstantially established through conduct or a course of dealing between the principal and agent. Bells Banking Co. v. Jackson Ctr., Inc., 938 S.W.2d 421, 424 (Tenn. Ct. App. 1996) (quoting 2A C.J.S. Agency § 153 (1972)). Implied authority must be predicated "'on some act or acquiescence of the principal,'" rather than the actions of the agent. Id. In the context of serving process, the record must contain "evidence that the defendant intended to confer upon [the] agent the specific authority to receive and accept service of process for the defendant." Arthur v. Litton Loan Servicing LP, 249 F. Supp. 2d 924, 929 (E.D. Tenn. 2002). Acting as the defendant's agent for some other purpose does not make the person an agent for receiving service of process. Id. Nor is the mere fact of acceptance of process sufficient to establish agency by appointment. Id.

In this case, Dr. Haynes did not expressly authorize Enochs to accept service of process of lawsuits on his behalf. Enochs admitted that she did not have authority to accept service of lawsuits for Dr. Haynes. Although Enochs signed for subpoenas for medical records requests as part of her job duties, the law is clear that acting as an agent for some other purpose does not automatically make her Dr. Haynes's agent for accepting service of process. Arthur, 249 F. Supp. 2d at 929. Furthermore, the mere fact that Enochs accepted service of this lawsuit does not, in and of itself, bind Dr. Haynes to the court's jurisdiction. Id.; accord Richards v. N.Y. State Dep't of Corr. Servs., 572 F. Supp. 1168, 1173 (S.D.N.Y. 1983). While some courts have relaxed the rule on agent authorization to find service on a receptionist sufficient where the individual defendant evaded or resisted service, there is no claim or evidence of such evasion or resistance by Dr. Haynes in this case. See, e.g., Frank Keevan & Son, Inc. v. Callier Steel Pipe & Tube, Inc., 107 F.R.D. 665, 671 (S.D. Fla. 1985).

The record contradicts Plaintiff's contention that Enochs had implied authority to accept service of process based on a custom and practice of "handling important papers." Enochs testified that, when she signed the summons, she did not know what she was signing but was simply complying with Peckenpaugh's request. If she had known that Peckenpaugh was serving a lawsuit, she testified that she would not have signed the summons. Rather than knowing what to do with "any important papers" that she received at the front desk, as Plaintiff contends, Enochs handed the summons and complaint over to Hill, her supervisor, precisely because Enochs "wouldn't have known what to do with [the summons and complaint] without calling" Hill. Dr. Melton testified that, to his understanding, customer service agents had signed for lawsuits during his tenure as registered agent, but he could not even identify who worked in the customer service department. Alred testified that customer

service agents would sign a summons only "[i]f they are not fully aware of what they are signing."

Based on these undisputed facts, we agree with the Court of Appeals that the personal delivery to Enochs of the summons and complaint addressed to Dr. Haynes did not comply with Tennessee Rule of Civil Procedure 4.04(1). Enochs did not have express or implied authority to accept service of process on behalf of Dr. Haynes. Accordingly, Constable Peckenpaugh's delivery to Enochs of the summons addressed to Dr. Haynes did not constitute service of process on Dr. Haynes.

### B. On Corporations

Tennessee Rule of Civil Procedure 4.04(4) governs the personal service of process on corporate defendants in this state. It reads as follows:

> The plaintiff shall furnish the person making the service with such copies of the summons and complaint as are necessary. Service shall be made as follows:
>
> . . . .
>
> (4) Upon a domestic corporation, or a foreign corporation doing business in this state, by delivering a copy of the summons and of the complaint to an officer or managing agent thereof, or to the chief agent in the county wherein the action is brought, or by delivering the copies to any other agent authorized by appointment or by law to receive service on behalf of the corporation.[7]

Here, Peckenpaugh delivered to Pruitt the summons addressed to MedSouth. Plaintiff does not contend that Pruitt was MedSouth's "officer or managing agent" or its "chief agent." We need only decide, therefore, whether Pruitt was an "agent authorized by appointment or by law to receive service on behalf of" a corporate defendant. And, again,

_____

[7] In prescribing how process is to be served, subparagraphs (1) and (4) of Rule 4.04 are more restrictive than other provisions of our Rules governing the service of later pleadings. Rule 5.02 allows service, for example, by handing the pleading to a represented party's attorney, leaving the pleadings at the attorney's office with a clerk or other person in charge, or even leaving the pleading in a conspicuous place within the office if no one is in charge. Also under that rule, mail service is complete upon mailing. The more stringent provisions in Rule 4 reflect the paramount significance of serving initial process, that is, "the document, usually a summons, that brings the defendant before the court, asserts the court's jurisdiction over the case, and requires the defendant to respond." Lewis v. Bowen, No. M2003-00985-COA-R3-CV, 2004 WL 2752811, at *3 (Tenn. Ct. App. Dec. 1, 2004).

-10-

actual notice does not excuse the failure to serve process in compliance with our Rules of Civil Procedure. Frye, 70 S.W.3d at 715; accord LSJ Inv. Co., 167 F.3d at 322.

The rule on serving corporations through their authorized agents "contemplates service on agents either expressly or impliedly appointed by the defendant organization as agents to receive process." 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1101, at 557 (3d ed. 2002).[8] We have already explained above the concept of actual authority, both express and implied. As Arthur makes clear, specific authority to receive and accept service of process for the defendant is required, and mere acceptance of process in a single instance does not constitute valid service. 249 F. Supp. 2d at 929.

Our Court of Appeals has held, however, that a corporate defendant's registered agent may authorize a subagent to assist in performing the registered agent's duties, including the acceptance of service of process. Rubio, 232 S.W.3d at 744. In Rubio the process server delivered process to the registered agent's personal secretary. According to the process server's affidavit, the secretary represented to the process server that she had authority to accept service on the registered agent's behalf; that she had, in fact, accepted service many times in the past; and that she would transmit process to the registered agent. After reviewing the statutory scheme for a corporation's designation of its registered agent and summarizing applicable principles of Tennessee agency law, the Court of Appeals held that "registered agents, individual or corporate, have implied authority to appoint subagents." Id. at 743-44. Applied to the facts of that case, the intermediate court concluded that the registered agent had actually authorized the receptionist to assist in accepting service of process, and thus personal delivery of process to the receptionist was sufficient to serve the defendant. Id. at 744.

We have further stated that the "apparent purpose" of Rule 4.04 is "to insure that process is served in a manner reasonably calculated to give a party defendant adequate notice of the pending judicial proceedings." Garland v. Seaboard Coastline R.R. Co., 658 S.W.2d 528, 530 (Tenn. 1983). Accordingly, service of an organizational defendant[9] may

---

[8] We have expressly adopted the federal courts' construction of the corresponding provision on service of corporations and unincorporated associations in the Federal Rules of Civil Procedure. Garland v. Seaboard Coastline R.R. Co., 658 S.W.2d 528, 530-31 (Tenn. 1983). Although the federal provision has been subsequently amended and renumbered, its pertinent language regarding agents authorized to receive service of process on behalf of corporations remains the same. See Fed. R. Civ. P. 4(h)(1)(B).

[9] Although Garland specifically involved service on an unincorporated association pursuant to Rule 4.04(3), that subsection and Rule 4.04(4) both allow service on an "agent authorized by appointment or by law to receive service on behalf of" the organization.

be made upon a representative so integrated with the organization that [s]he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on h[er] part to receive service.

Id. at 531.

In this case, MedSouth did not expressly authorize Pruitt to accept service of process of lawsuits on its behalf, based on the testimony of Alred, its administrator, and Dr. Melton, its registered agent. Pruitt admitted that she did not have authority to accept service of lawsuits. While Plaintiff contends that Pruitt had implied authority to accept service of process based on a custom and practice of "handling important papers," the record contradicts this contention. Just like Enochs, Pruitt testified that, when she signed for the summons, she did not know what she was signing for. Instead, she signed for the summons at Peckenpaugh's request. While Pruitt occasionally placed other documents in a physician's box in the mail room, she testified that she did not ordinarily sign for mail. As we stated previously, Dr. Melton testified that, to his understanding, customer service agents had signed for lawsuits against MedSouth during his tenure as registered agent, but he could not even identify which individuals worked in the customer service department. Alred testified that customer service agents would sign a summons only "[i]f they are not fully aware of what they are signing."

Although Pruitt signed for subpoenas for medical records requests as part of her job duties, the law is clear that acting as a corporation's agent for some other purpose does not automatically make a person the corporation's agent for accepting service of process. Arthur, 249 F. Supp. 2d at 929-30; 1 James Wm. Moore et al., Moore's Federal Practice § 4.93, at 4-133 (3d ed. 2009). Furthermore, the mere fact that Pruitt accepted service of this lawsuit does not, in and of itself, bind MedSouth to the court's jurisdiction. Arthur, 249 F. Supp. 2d at 929; Richards, 572 F. Supp. at 1173. While some courts have relaxed the rule on agent authorization to find service on a receptionist sufficient where the corporation evaded or resisted service, there is no claim or evidence of such evasion or resistance by MedSouth in this case. See Amnay v. Del Labs, 117 F. Supp. 2d 283, 286 (E.D.N.Y. 2000).

The federal cases on which Plaintiff relies are distinguishable. In Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., the court emphasized that the company was small; the receptionist "[p]resumably" held a "commensurately large" role in the company; and, when the process server asked who was authorized to accept service for the corporation, the receptionist answered that no one else was there and she was the only one in the office. 840 F.2d 685, 688-89 (9th Cir. 1988). Because the facts before us differ on all of those points, the Direct Mail Specialists opinion is simply not applicable to this case.

Moreover, based on the nature of Pruitt's job responsibilities, we are likewise not persuaded by Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa, 428 F. Supp. 1237 (S.D.N.Y. 1977). In that case, the court denied a motion to dismiss for insufficiency of service of process, where a secretary for the corporate defendant's New York sales representative accepted service. Id. at 1241. The secretary's duties included the endorsement of checks and preparation of correspondence to the defendant, and the process server noted on the return of service that the secretary was in charge of the office. Id. at 1251. The court concluded that the secretary "was in practical effect, if not formal title, an assistant manager of [the defendant's] New York agency, and not a mere clerical employee." Id. Here, by contrast, Pruitt performed clerical work, did not have management or supervisory responsibilities, and testified that she was not an officer or managing agent of MedSouth. Indeed, according to Alred's testimony, Pruitt's responsibilities were "secretarial or clerical in nature." Pruitt's job responsibilities make clear that she did not "st[an]d in such a position as to render it fair, reasonable and just to imply the authority on h[er] part to receive service of process" on MedSouth's behalf. See Garland, 658 S.W.2d at 531.

Likewise, the record here provides no support for the kind of subagency relationship that the Court of Appeals found in Rubio. Neither Dr. Melton nor Pruitt offered any testimony that would suggest Dr. Melton appointed Pruitt as his subagent to perform any of his duties as registered agent.

Based on the undisputed facts, we agree with the Court of Appeals that the personal delivery of the summons and complaint to Pruitt did not comply with Tennessee Rule of Civil Procedure 4.04(4). Pruitt was neither an agent authorized to receive service of process for MedSouth nor a subagent of the registered agent, Dr. Melton. Accordingly, Plaintiff's attempt to effectuate service of process on MedSouth through Constable Peckenpaugh was unsuccessful.

## II. Service of Process by Mail Upon Defendants Within the State of Tennessee

### A. On Individuals

Tennessee Rule of Civil Procedure 4.04(10) provides that service of process may also be effectuated by mail:

> Service by mail of a summons and complaint upon a defendant may be made
> by the plaintiff, the plaintiff's attorney or by any person authorized by statute.
> After the complaint is filed, the clerk shall, upon request, furnish the original
> summons, a certified copy thereof and a copy of the filed complaint to the

-13-

plaintiff, the plaintiff's attorney or other authorized person for service by mail. Such person shall send, postage prepaid, a certified copy of the summons and a copy of the complaint by registered return receipt or certified return receipt mail to the defendant. If the defendant to be served is an individual or entity covered by [a subparagraph of Rule 4], the return receipt mail shall be addressed to an individual specified in the applicable subparagraph. The original summons shall be used for return of service of process pursuant to Rule 4.03(2).

Second, additional requirements for service by mail are discussed in Rule 4.03(2):

When process is served by mail, the original summons, endorsed as below; an affidavit of the person making service setting forth the person's compliance with the requirements of this rule; and, the return receipt shall be sent to and filed by the clerk. The person making service shall endorse over his or her signature on the original summons the date of mailing a certified copy of the summons and a copy of the complaint to the defendant and the date of receipt of the return receipt from the defendant. *If the return receipt is signed by the defendant, or by a person designated by Rule 4.04 or by statute, service on the defendant shall be complete.* If not, service by mail may be attempted again or other methods authorized by these rules or by statute may be used.

(Emphasis added). The language of Rule 4.03 "set[s] forth a mandatory requirement rather than a discretionary ideal that need not be strictly enforced to confer jurisdiction over a party." Estate of McFerren v. Infinity Transp., LLC, 197 S.W.3d 743, 748 (Tenn. Workers' Comp. Panel 2006).

Based on Rule 4.03's explicit restriction of whom may sign the return receipt, "[o]rdinarily, . . . when the person to be served is an individual, the rule seems to require that the return receipt be signed by the defendant and no one else." Banks & Entman, § 2-3(v), at 2-37. Thus, in Edwards v. Campbell, No. E2000-01463-COA-R3-CV, 2001 WL 52776 (Tenn. Ct. App. Jan. 23, 2001), the plaintiffs attempted to serve process by mail. The signatory of the return mail receipts was, according to plaintiff's unsubstantiated allegations, the wife and mother of the defendants. However, nothing in the record indicated that the signatory was a "person[] designated by Rule 4.04 or by statute," such as an agent authorized by defendants to accept service of process. Therefore, the Court of Appeals held that the plaintiffs did not perfect service of process when they obtained the alleged wife and mother's signature on the return receipts. Id. at *5.

A similar analysis of Tennessee law appears in Massey v. Hess, No. 1:05-cv-249, 2006 WL 2370205 (E.D. Tenn. Aug. 14, 2006). There, the plaintiffs attempted to serve two police officers by certified mail at the station where the officers worked. Another employee at the station received and signed for the process documents. The federal court rejected plaintiffs' contention that the officers were properly served under the Tennessee Rules of Civil Procedure.[10] Id. at *3. The employee who received the documents was "simply a person who work[ed] in the same office as" the defendant officers. Id. at *2. The employee was not "an agent authorized by appointment or law to receive service on behalf" of the officers, within the language of Rule 4.04(1). Id. Therefore, the return receipt was not "signed by the defendant, or by a person designated by Rule 4.04 or by statute," and service was not "complete" within the meaning of Rule 4.03(2). Id. at *3.

In this case, because Plaintiff did not effectively serve the original complaint, the viability of Plaintiff's lawsuit against Dr. Haynes hinges on whether Plaintiff effectively served the amended complaint on Dr. Haynes by certified mail. The record establishes Plaintiff's initial compliance with Rule 4.04(10) in her effort to serve the timely-filed amended complaint on Dr. Haynes by mail. Plaintiff's attorney addressed to Dr. Haynes a copy of the summons and the amended complaint by certified mail, return receipt requested. According to the plain language of Rule 4.03(2), however, service was not "complete" unless the signatory of the return receipt was "a person designated by Rule 4.04."[11] In this case, Funderburk signed the return receipt, rather than Dr. Haynes. As we have discussed supra, Rule 4.04(1) states that "an agent authorized by appointment . . . to receive service on behalf of" an individual defendant may receive said service.

The dispositive question, therefore, is whether Funderburk was an agent authorized by appointment to receive service on Dr. Haynes's behalf. Dr. Haynes's affidavit and Funderburk's deposition testimony agree that Funderburk was not authorized to receive service of process on behalf of Dr. Haynes. Furthermore, Funderburk did not check the "Agent" box on the return receipt when she signed for the summons and amended complaint addressed to Dr. Haynes.

---

[10] The court evaluated service under Tennessee's rules because Federal Rule of Civil Procedure 4(e)(1) allows service in the United States of individuals other than minors or incompetents pursuant to the law of the state in which the district court is located. Although the police officers worked in Virginia, the court cited Tennessee Rule of Civil Procedure 4.05, which allows service on out-of-state defendants using any method prescribed in Rule 4.04 whenever Tennessee law authorizes out-of-state service and the service is "reasonably calculated to give actual notice."

[11] A person designated by statute may also sign the return receipt, but the parties have not identified any such statute that would have authorized Funderburk to sign on Dr. Haynes's behalf.

Nonetheless, Plaintiff contends that Funderburk was authorized to receive service of process because she was authorized to receive and sign for certified mail addressed to MedSouth's employees, including physicians such as Dr. Haynes who worked at the Dyersburg clinic. Funderburk testified that she was one of at least four employees in administration who regularly signed for certified mail. She testified that, when the Post Office delivered certified mail, the mail carrier would ask the first person who could be found in administration to sign for it. After signing for the mail, Funderburk would take it to the recipient physician's mailbox, where the physician or the physician's nurse would pick it up. Funderburk testified that her supervisor, Sheila Curtis, was aware that employees in administration were signing for certified mail. Alred corroborated Funderburk's description of the certified mail procedures, testifying himself that an administrative office employee, such as Funderburk, would generally sign the return receipt. Therefore, there is evidence in the record that Funderburk was authorized to sign for certified mail addressed to MedSouth employees and delivered to the Dyersburg clinic.

Such authority does not *ipso facto* establish that Funderburk was an agent authorized by appointment to receive service of process for Dr. Haynes, however. The Court of Appeals previously confronted this issue in Boles, the case on which the trial court relied in denying Defendants' motion for summary judgment.[12]  See 2000 WL 1030837. In Boles, the plaintiffs sued their home insurer and its claims investigator for failing to pay their claim for fire loss. Plaintiffs attempted service by certified mail, and a secretary in the insurer's Manchester claims office signed return receipts for both the insurance company and the claims investigator. The trial court granted the defendants' motion to dismiss for insufficiency of service of process.

Recognizing the issue as one of first impression, the Court of Appeals held that the secretary was authorized to receive service of process on behalf of both defendants and reversed the judgment of dismissal. Id. at *5-6. The Court of Appeals began by citing persuasive authorities from other jurisdictions concluding that an employee authorized to sign for and receive a defendant's certified mail was likewise an authorized agent to accept service of process on that defendant's behalf. Id. The intermediate court then discussed the testimony of the secretary and the district claims manager that the secretary was authorized to sign for and receive certified mail on behalf of the insurer and its employees in the

_____

[12] Because Boles is relevant here and in the subsequent section concerning the attempt to use certified mail to serve the amended complaint on MedSouth, we describe the decision's facts and reasoning in their entirety, including what was relevant to the Boles plaintiffs' attempted service on both the individual and corporate defendants.

Manchester office.[13] Id. The court emphasized that the secretary had received specific authorization to sign for and receive certified mail; signed for both pieces of certified mail in this case; and then delivered those documents to the recipients, who forwarded the documents to legal counsel. Id.

In the case presently before us, the Court of Appeals declined to follow Boles's conclusion that an agent was authorized to accept service of process solely on the basis of having authority to sign for certified mail. The intermediate court rejected the proposition that "the ability to sign for certified mail, in and of itself, equates to authority to receive service of process." Hall ex rel. Hall, 2009 WL 782761, at *13. Instead, the court concluded that while "Rule 4.04(10) is intended to provide plaintiffs with an alternate *means* of effectuating service, . . . [it] is not intended to expand the *class of persons* who are authorized to accept service of process under Rule 4.04(1) and 4.04(4)." Id. (emphasis added). While the "[a]uthority to sign for certified mail may be a factor" in whether Funderburk had the authority to accept service of process, "that fact in and of itself is not sufficient to support a finding of implied authority." Id. at *13-14. As for Boles's citations to persuasive authorities from other jurisdictions that found the authority to accept service of process based on the authority to sign for and receive certified mail, the Court of Appeals concluded that its prior "reliance on those cases was misplaced." Id. at *12. Instead, those cases raised different questions about the adequacy of service and/or involved procedural rules that were meaningfully different from Tennessee's rules. Id. at *10-12. We agree.

The Court of Appeals ultimately concluded that Funderburk was not authorized by appointment to receive service on behalf of Dr. Haynes. The court emphasized the testimony from both Dr. Haynes and Funderburk that she did not have express authority to accept service of process on his behalf. Likewise, there was no implied authority because the record did not indicate that accepting service on Dr. Haynes's behalf was incidental and necessary to Funderburk's duties as an accounts payable clerk.

Decisions from other jurisdictions illustrate the importance of the procedural rule language in determining whether the authority to sign for certified mail is sufficient to convey authority to receive service of process. In Cook, a receptionist at a medical office accepted service for one of the physicians who shared that office space. 967 S.W.2d at 689. That state's rule of procedure, equivalent to our Rule 4.04(1), allowed personal service of an individual defendant by delivering process "to an agent authorized by appointment or required by law to receive service of process." Mo. R. Civ. P. 54.13(b)(1). The

_____

[13] Although the claims manager's response to requests for admissions denied that the secretary was authorized to sign for and receive his certified mail, the Court of Appeals resolved the disputed facts in the plaintiffs' favor. The claims manager did concede that he received actual notice of the lawsuit.

receptionist's job activities for the defendant included, among other tasks, accepting the defendant's certified mail. The defendant and his assistant had not expressly authorized the receptionist to accept service of process for the defendant, and the receptionist testified that she had not been given instructions to receive service on the defendant's behalf. The Missouri Court of Appeals held that the receptionist was not an agent authorized by appointment to accept service on the defendant's behalf. Id. at 693. The receptionist "performed only very limited tasks for" the defendant, including receipt of the defendant's certified mail, and those activities did not "encompass the power to receive service of process on behalf of [d]efendant." Id. at 692. Nor was the power to accept service of process "incidental and necessary" to accomplish the job activities that the receptionist performed for the defendant. Id.

The significance of rule language specifically directing service on an agent authorized to receive service of process is further demonstrated by a different outcome in a case applying a rule that lacked such specific language. See Barlage v. Valentine, 110 P.3d 371 (Ariz. Ct. App. 2005). In that case, the applicable rule directed that service by mail of an out-of-state defendant "be sent to the person to be served by any form of mail requiring a signed and returned receipt." Ariz. R. Civ. P. 4.2(c). The plaintiff mailed the summons and complaint to the address on the defendant's driver's license, which turned out to be the location of a commercial mail-receiving agency ("CMRA"). The defendant had expressly authorized in writing that the CMRA could accept certified mail (including restricted delivery mail) on her behalf, and one of the CMRA's employees had signed the return receipt for the summons and complaint. Accordingly, the court held that the CMRA was the defendant's agent for the purpose of receiving mail. The defendant contended that service was not effective because the defendant had not specifically made the CMRA her agent for service of process. The court rejected that argument because the language of the rule

> does not require delivery to someone expressly authorized to receive service, but rather, to "the person to be served." . . . Because [the defendant] unconditionally authorized her CMRA to accept certified mail on her behalf, the CMRA's acceptance of the summons and complaint delivered in that manner sufficiently evidenced [the defendant's] receipt of service.

Id. at 377. The authority to receive certified mail was sufficient in that case to vest the CMRA with the authority to accept service of process, but only in the absence of a provision requiring delivery to an agent authorized to accept service of process.

Based on the language of the Tennessee Rules of Civil Procedure and the interpretation of analogous provisions by courts in other jurisdictions, we hold that a person with the authority to sign for and receive certified mail does not, without more, qualify as an

agent authorized by appointment to receive service of process on behalf of an individual defendant. And, based on the undisputed facts in the record, we agree with the Court of Appeals that Funderburk was not an agent authorized by appointment to accept service of process on behalf of Dr. Haynes. Therefore, Plaintiff did not effectuate service of process on Dr. Haynes when Funderburk signed the return receipt for the summons and amended complaint. Accordingly, both of Plaintiff's attempts to serve Dr. Haynes in this action failed to comply with the relevant provisions of Tennessee Rule of Civil Procedure 4.

This holding in no way precludes a plaintiff who wishes to serve a defendant by mail from doing so. When sending the summons and complaint via certified or registered mail, the plaintiff may avoid the predicament in this case by restricting delivery to a specific person. See Stonewall Ins. Co. v. Horak, 325 N.W.2d 134, 136 (Minn. 1982) ("prudence would seem to dictate that restricted certified mail, which includes an endorsement on the envelope to 'deliver to addressee only,' be used"). Also, the plaintiff is not limited to one bite at the apple. If delivery by certified mail fails in the first instance, Rule 4.03(2) expressly states that "service by mail may be attempted again or other methods authorized by these rules or by statute may be used."

## B. On Corporations

Because Plaintiff did not effectively serve the original complaint, the viability of Plaintiff's lawsuit against MedSouth hinges on whether Plaintiff effectively served the amended complaint on MedSouth by certified mail. With regard to the attempted service of that amended complaint, the record establishes Plaintiff's initial compliance with Rule 4.04(10). Plaintiff's attorney addressed to Dr. Melton, the registered agent, a copy of the summons and the amended complaint by certified mail, return receipt requested. According to the plain language of Rule 4.03(2), however, service was not "complete" unless the signatory of the return receipt was "a person designated by Rule 4.04."[14] In this case, Funderburk signed the return receipt, rather than Dr. Melton. As we have discussed supra, Rule 4.04(4) designates "an officer or managing agent . . . [,] the chief agent in the county wherein the action is brought, or . . . any other agent authorized by appointment or by law to receive service on behalf of the corporation" as appropriate individuals to receive process for a corporate defendant.

The dispositive question, therefore, is whether Funderburk fell within any of the categories designated by Rule 4.04(4) or, per Rubio, was authorized by Dr. Melton as his subagent for performing his duties as registered agent. We begin with the question of

---

[14] A person designated by statute may also sign the return receipt, but the parties have not identified any such statute that would have authorized Funderburk to sign on MedSouth's behalf.

whether Funderburk was MedSouth's authorized agent to receive service. On this point the deposition testimony of Funderburk, Dr. Melton, and Alred uniformly maintains that Funderburk was not authorized to receive service of process on MedSouth's behalf. Furthermore, Funderburk did not check the "Agent" box on the return receipt when she signed for the summons and amended complaint addressed to Dr. Melton.

Nonetheless, Plaintiff contends that Funderburk had authority to receive service of process for MedSouth because she was authorized to receive and sign for certified mail addressed to MedSouth. In our analysis of the attempted service by certified mail on Dr. Haynes, we discussed the evidence supporting the conclusion that Funderburk was authorized to sign for some certified mail delivered to the MedSouth clinic. That discussion is equally applicable here. Nothing in the record suggests that Funderburk and her colleagues in the administrative office treated certified mail addressed to MedSouth differently from certified mail addressed to individual physicians who worked at the clinic. As she did with Dr. Haynes's mail, Funderburk testified that she placed MedSouth's mail in Dr. Melton's box because the envelope had Dr. Melton's name on it.

We must now decide whether the authority to sign for certified mail makes Funderburk an agent authorized by appointment to receive service of process for MedSouth. As with the attempted service on Dr. Haynes, Plaintiff relies on the Court of Appeals' decision in Boles, 2000 WL 1030837.

As set forth above, the Court of Appeals in this case declined to follow Boles to the extent it held that an agent was authorized to accept service of process solely on the basis of having authority to sign for certified mail. Instead, the Court of Appeals concluded that Funderburk was not authorized by appointment to receive service on behalf of MedSouth. The intermediate court found nothing in the record to indicate that MedSouth had granted Funderburk the express or implied authority to accept service on its behalf. The court further reasoned that Funderburk's job did not place her in a position that would make it fair, reasonable, and just to imply the authority to accept service on MedSouth's behalf. Rather than fulfilling managerial duties or otherwise holding a position of authority, Funderburk was a payroll clerk who happened to be one of several people in the administrative office whom the mail carrier might ask to sign for certified mail.

The conclusion of courts in other jurisdictions interpreting comparably worded provisions supports the Court of Appeals' construction. In one case, a court was interpreting a state rule directing service by delivery of the summons and complaint to "'a person authorized by the corporation to receive service of process.'" Dill v. Berquist Constr. Co., 29 Cal. Rptr. 2d 746, 749 n.3 (Cal. Ct. App. 1994) (quoting Cal. Civ. Proc. Code §

416.10(b)).[15] The only evidence of agency in <u>Dill</u> was the purported agent's signature in the "Signature–Agent" line of the return receipt. <u>Id.</u> at 752. The court rejected the argument that the authority to sign for mail meant the signatory was also authorized to accept service of process within the meaning of the service statute. The court reasoned as follows:

> Agents are not fungible. A person who is authorized to perform one function on behalf of a principal may have no authority at all regarding a different function. In particular, the fact that a person is authorized to receive mail on behalf of a corporation and to sign receipts acknowledging the delivery of that mail does not mean that the same person is authorized by the corporation to accept service of process.

<u>Id.</u>

In another jurisdiction where the rule similarly permitted service on a corporation by delivering the summons to an "agent authorized expressly or impliedly . . . to receive service

---

[15] We should explain why we are citing a case from a jurisdiction whose law was relied on in <u>Boles</u> and subsequently distinguished by the Court of Appeals' decision in this case. To support the proposition that an employee authorized to sign for and receive a defendant's certified mail is likewise an authorized agent to accept service of process on the defendant's behalf, <u>Boles</u> cited a decision applying California law. <u>See</u> <u>Boles</u>, 2000 WL 1030837, at *5 (citing <u>Bay Plaza Mgmt. Co. v. Estep</u>, 525 P.2d 56, 58 (Or. 1974)). By contrast, in the proceedings below, the Court of Appeals concluded that <u>Bay Plaza Management</u> was distinguishable because (1) its analysis focused on the requirements of due process, rather than procedural rules, and (2) California adopted "substantially different" rules, including one allowing a finding of adequate service based on actual notice alone. <u>Hall ex rel. Hall</u>, 2009 WL 782761, at *11 & n.6.

As for the first distinction, we agree that <u>Bay Plaza Management</u> considered the authority to sign for certified mail in the context of determining whether service was adequate under federal due process standards, a question not raised in this appeal. That distinction alone is sufficient to undermine <u>Boles</u>'s reliance on the <u>Bay Plaza Management</u> decision.

As for the second distinction, while actual notice does suffice in the context of serving corporations under California rules, <u>see</u> <u>Dill</u>, 29 Cal. Rptr. 2d at 751 (quoting <u>Pasadena Medi-Ctr. Assocs. v. Superior Court</u>, 9 Cal. 3d 773, 778 (Cal. 1973)), that notice must be received by one of the individuals enumerated in the statute, such as a person authorized by the corporation to receive service of process, <u>id.</u> at 753. In the context of <u>Dill</u>, the plaintiff argued that, despite his failure to address the summons and complaint to a proper person, the signatory for the mailing was, in fact, "a person authorized by the corporation to receive service of process," and that signature established actual delivery to someone enumerated in the service statute. <u>Id.</u> at 752. The question presented was whether the signatory had been authorized by the corporation to receive service of process. Therefore, the difference in the underlying law does not detract from the similarity in the language between the two rules and the persuasive authority of <u>Dill</u>'s analysis of a comparably worded provision.

of summons," the trial court found effective service based on the purported agent's authority to sign for receipt of mail.  See Sakovich v. O'Neill, No. C2-88-1073, 1989 WL 10407, at *1 (Minn. Ct. App., February 14, 1989) (discussing Minn. R. Civ. P. 4.03(c)).  In that case, the certified mail receipts for the defendant medical clinic were signed by an individual who worked at the clinic's registration desk.  The court of appeals reversed the trial court and dismissed the action for lack of personal jurisdiction.  Id. at *3.  The court reasoned that the absence of express authority was "undisputed" and there was "no evidence in the record to establish a valid implied agency relationship between the [defendant] and the [signatory] *for purposes of accepting service of process*."  Id. at *2 (emphasis added).  Again, where the rule specifically required that the agent be authorized to receive service of process, evidence of the authority to sign for certified mail was insufficient to make service effective.

Based on the language of the Tennessee Rules of Civil Procedure and the interpretation of analogous provisions by courts in other jurisdictions, we hold that a corporate agent with the authority to sign for and receive the corporation's certified mail does not, without more, qualify as an agent authorized by appointment to receive service of process.  And, based on the undisputed facts in the record, we agree with the Court of Appeals that Funderburk was not an agent authorized by appointment to accept service of process on behalf of MedSouth.  Likewise, the record here provides no support for the kind of subagency relationship that the Court of Appeals found in Rubio.  Neither Dr. Melton nor Funderburk offered any testimony that would suggest Dr. Melton appointed Funderburk as his subagent to perform any of his duties as registered agent.  Accordingly, both of Plaintiff's attempts to serve MedSouth in this action failed to comply with the relevant provisions of Tennessee Rule of Civil Procedure 4.

As we explained supra in reaching the same conclusion with respect to individual defendants, our holding does not preclude a plaintiff from serving process on a corporation by mail. A plaintiff may restrict delivery to any of the individuals designated in Rule 4.04(4).  Furthermore, in the event that service by mail is unsuccessful, Rule 4.03(2) expressly allows the plaintiff to try service by mail again or use another method of process service authorized by our Rules.  Moreover, we agree with the Court of Appeals that Rule 4.04(10) gives plaintiff an alternative means to effect service but does not permit plaintiff to serve persons other than those expressly listed in 4.04(4).  To hold otherwise, as the Court of Appeals did in Boles, would run counter to Rule 4.03(2), which requires a return receipt "signed by the defendant, or by a person designated by Rule 4.04 or by statute" to complete service by certified mail.

### III. Waiver by Participation

For the first time in this litigation, Plaintiff urges us in her brief to hold that Defendants waived the service of process defense by participating in the litigation during the approximately eighteen months after Defendants filed their answer and before they filed their motion for summary judgment. However, because this issue was not raised below, it is waived. Tenn. R. App. P. 13(a) advisory comm'n cmt. Even if considered on its merits, however, this argument must fail.

"In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute . . . an affirmative defense." Tenn. R. Civ. P. 8.03.[16] Here, Defendants' answer listed improper service and insufficiency of process as their first affirmative defense. Defendants specifically pled that the summonses, complaint, and amended complaint "were not delivered personally to Dr. Haynes or the authorized agent for service of process for MedSouth Healthcare, P.C."

Plaintiff concedes that this statement of facts is sufficient to satisfy the requirements of Rule 8.03, and we agree. Plaintiff also admits that no Tennessee case has found the defense waived under these circumstances, and that is also correct. Having adequately raised insufficiency of process as an affirmative defense in their answer, Defendants did not waive the defense by their continued participation in the lawsuit. See Toler v. City of Cookeville, 952 S.W.2d 831, 835 (Tenn. Ct. App. 1997) (holding that our Rules "directly contradict" the argument that defendant waives defense of insufficient process by "merely filing an answer"); see also State ex rel. Barger v. City of Huntsville, 63 S.W.3d 397, 399 (Tenn. Ct. App. 2001) (after properly raising insufficiency of process by Rule 12.02 motion, "any other participation in the lawsuit by the defendant does not constitute a waiver"); 5C Wright & Miller, § 1391, at 505 (explaining that the same principle holds true in federal practice). The lone Tennessee case cited by Plaintiff is distinguishable, for in that case the defendant waived its insufficiency of process defense because its Rule 12 motion failed to recite the supporting facts "in short and plain terms." See Barker v. Heekin Can Co., 804 S.W.2d 442, 444 (Tenn. 1991) (discussing Tenn. R. Civ. P. 8.03).

Here, by contrast, Plaintiff simply invites this court to force Defendants' hand by requiring Defendants to file the dispositive motion on a properly pled defense earlier—namely, before the expiration of the statute of limitations. We decline the invitation.

---

[16] See also Tenn. R. Civ. P. 12.02 ("Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion in writing: . . . (5) insufficiency of service of process").

Defendants properly raised the defense in their answer and did not waive it prior to filing their motion for summary judgment.

Because we hold that Plaintiff never effectively served Defendants with process and that Defendants have not waived this defense, the one-year statute of limitations for malpractice actions has run. See Tenn. Code Ann. § 29-26-116. Pursuant to Tennessee Rule of Civil Procedure 3:

> [i]f process . . . is not served within 90 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process . . . .

Here, Plaintiff obtained timely issuance of process in conjunction with both the original and amended complaints. For the reasons stated supra, however, process was not effectively served on either complaint within the ninety-day window. Because Plaintiff did not obtain issuance of new process within one year of the issuance of the previous process, Plaintiff cannot rely on the filing of the original lawsuit to toll the statute of limitations. As Plaintiff concedes, by the time that Defendants filed their motion for summary judgment based on insufficiency of process, the statute of limitations had already expired.

### Conclusion

Because Enochs and Pruitt, the customer service representatives, were not agents authorized by appointment to receive service of process on behalf of Dr. Haynes or MedSouth, respectively, and Funderburk, the accounts payable clerk, was not an agent authorized by appointment to receive service of process on behalf of Dr. Haynes or MedSouth, service of process on these individuals did not constitute effective service of process on either Dr. Haynes or MedSouth. Thus, the one-year statute of limitations on this medical malpractice cause of action has run. See Tenn. Code Ann. § 29-26-116. Therefore, we affirm the judgment of the Court of Appeals reversing the decision of the trial court and remanding the case for entry of summary judgment in favor of Defendants. We tax the costs of this appeal to Plaintiff Billie Gail Hall, as Surviving Spouse and Administratrix of the Estate of Billy R. Hall, and her surety, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE

-24-