# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
August 24, 2011 Session

## TISH WALKER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF LISA JO ABBOTT
### v.
## DR. SHANT GARABEDIAN

### Appeal from the Circuit Court of Dyer County
### No. 2007-CV-143    R. Lee Moore, Jr., Judge

### No. W2010-02645-COA-R3-CV - Filed December 28, 2011

This appeal concerns the application of the locality rule in a medical malpractice case. The trial court excluded the testimony of the plaintiff's medical expert, based on the locality rule. On this basis, the trial court granted summary judgment to the defendant physician. The plaintiff appeals. We vacate the order excluding the testimony of the plaintiff's expert and the grant of summary judgment, and remand for reconsideration in light of the Tennessee Supreme Court's recent decision *Shipley v. Williams*, 350 S.W.3d 527 (Tenn. 2011).

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Vacated and Remanded.

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Michael C. Skouteris and Milton E. Magee, Jr., Memphis, Tennessee, and Jason R. Creasy, Dyersburg, Tennessee for Plaintiff/Appellant Tish Walker, Individually and as Administrator of the Estate of Lisa Jo Abbott.

Jeffrey L. Lay, Dyersburg, Tennessee for Defendant/Appellee, Dr. Shant Garabedian.

# OPINION

## FACTS AND PROCEEDINGS BELOW

On November 16, 2006, Lisa Jo Abbott was involved in a one-vehicle accident near Trenton, Gibson County, Tennessee. She was taken to the emergency room of Gibson General Hospital in Trenton, Tennessee and treated by Defendant/Appellee Shant Garabedian, M.D. ("Dr. Garabedian"). Dr. Garabedian treated Ms. Abbott and discharged her the same day, with instructions for her to return to the emergency room immediately if she had any problems and she could not contact her physician.

The next morning, Ms. Abbott presented at the emergency room of the Dyersburg Regional Medical Center in Dyersburg, Tennessee, where she was told to see a local orthopedic surgeon and discharged. Two days later, on November 19, 2006, Ms. Abbott returned to the Dyersburg Regional Medical Center, and was later transferred to the intensive care unit at Vanderbilt University Hospital in Nashville, where she eventually died.

On October 19, 2007, Ms. Abbott's daughter, Plaintiff/Appellant Tish Walker ("Walker"), filed this lawsuit in the Circuit Court of Dyer County, Tennessee against Dr. Garabedian, among others,[1] alleging negligence and medical malpractice. Dr. Garabedian filed an answer denying all allegations of negligence and asserting various affirmative defenses. Discovery ensued.

In the course of discovery, the deposition of Martin T. Evans, M.D. ("Dr. Evans") was taken in Richmond, Virginia on December 17, 2008. Dr. Evans is a trauma surgeon who practices in Richmond, Virginia and surrounding areas, including the Midlothian and Hopewell, Virginia communities. In his deposition, Dr. Evans stated that he had reviewed material about Dyersburg and Gibson County given to him by Walker's counsel and had also accessed information about the communities on his computer. He said that he knew that Gibson General Hospital in Trenton was a smaller hospital but was unsure of the number of beds it had or the number of physicians and specialists on site at any given time. Dr. Evans noted that he had served as an expert witness in another lawsuit in Dyer County in 2007, and said that he researched the medical community in the area at that time. Prior to that, Dr. Evans testified, he knew nothing about Trenton, Tennessee or Gibson County, had never been there, and had never spoken to any physicians who practiced there.

---

[1]Several other defendants were named in the initial complaint. The other named defendants have since been dismissed, leaving Dr. Garabedian as the sole remaining defendant.

On April 15, 2010, Dr. Garabedian filed a motion *in limine* to exclude any expert testimony by Dr. Evans, arguing that he was not familiar with the standard of care for emergency medical physicians in Trenton, Gibson County, Tennessee, as required under Tennessee Code Annotated § 29-26-115. At the same time, Dr. Garabedian filed a motion for summary judgment, arguing that, if the trial court excluded Dr. Evans' expert testimony, this would leave Walker unable to prove the applicable standard of care. A week later, Dr. Garabedian filed an amended motion for summary judgment, and attached Dr. Garabedian's own affidavit stating his expert opinion that the medical care he provided to Ms. Abbott complied with the standard of care for physicians such as himself practicing rural emergency medicine in the Trenton, Gibson County, Tennessee community in November 2006.

In June 2010, Walker filed a response to Dr. Garabedian's motion *in limine* to exclude Dr. Evans' expert testimony. In support of the response, Walker filed a supplemental affidavit by Dr. Evans, in which Dr. Evans testified that the applicable standard of care was derived from his training, practice and experience in trauma medicine in emergency rooms, and that he applied a local standard of care for assessing and managing the type of injury Ms. Abbott suffered in 2006, in communities similar to Trenton, Gibson County, Tennessee. Prior to being deposed, Dr. Evans said, he reviewed statistical information for Gibson County and the Gibson General Hospital, and compared the data with statistics for comparable hospitals in communities in which he had practiced emergency trauma medicine in 2006. Based on the statistical data, Dr. Evans asserted that Trenton, Gibson County, Tennessee is a community of similar size and demographics as communities in which Dr. Evans practiced, specifically, Midlothian and Hopewell, Virginia, and that the medical communities and facilities were also similar. Walker also filed a response opposing Dr. Garabedian's motion for summary judgment.

Later that month, the trial court held a hearing on several motions, including Dr. Garabedian's motion *in limine* to exclude Dr. Evans' testimony and his summary judgment motion.[2] After hearing the arguments of counsel, the trial court took the motions under advisement to consider the legal authority submitted by the lawyers and the record, in particular the deposition of Dr. Evans and the affidavits submitted by both Dr. Evans and Dr. Garabedian.

---

[2]There were also motions concerning the dismissal of prejudgment interest claim, the dismissal of claims under the Emergency Medical Treatment of Labor Act, and a motion to exclude the testimony of another medical expert. These motions were all granted. The resolution of these motions is not at issue in this appeal.

On July 9, 2010, the trial court issued an order granting Dr. Garabedian's motion *in limine* to exclude the testimony of Dr. Evans. In the order, the trial court stated that "at the time of Dr. Evans's deposition . . . , he knew nothing about the Gibson County Hospital or the Trenton, Gibson County community." In his supplemental affidavit, the trial court said, Dr. Evans recounted "some information about Gibson County, Tennessee, that he did not have at the time he published his opinion regarding the standard of care of the defendant, Dr. Garabedian." The trial court also stated that the standard of care espoused by Dr. Evans was "a national standard of care" and did not comply with the locality rule in Tenn. Code Ann. § 29-26-115(a). The trial court expressly relied on **Stovall v. Clarke**, 113 S.W.3d 715 (Tenn. 2003), in which the Supreme Court reversed the trial court's exclusion of an expert witness. The trial court contrasted the expert witness in **Stovall** with Dr. Evans, in part because the expert in **Stovall** "understood the locality rule and specifically stated that he applied the local standard rather [than] the national standard" of care. On the issue of whether the compared Virginia communities are similar to the Gibson County community, the trial court found that Dr. Evans offered only "conclusory statements" to support his assertion that the communities are similar. The trial court found nothing in the record "to suggest that the Virginia communities are similar to Gibson County, Tennessee, other than these mere conclusory statements." On this basis, the trial court held that Dr. Evans was not qualified as an expert to testify about the standard of care applicable to Gibson County, Tennessee.

Walker subsequently filed a motion to reconsider the order excluding the testimony of Dr. Evans. Walker argued that the trial court did not take into account evidence on the similarity of the compared communities submitted after Dr. Evans' deposition, including the statements in Dr. Evans' supplemental affidavit. In a hearing held on August 13, 2010 regarding the motion to reconsider, the trial court clarified that it considered the evidence submitted after Dr. Evans' deposition but nevertheless found that the compared Virginia communities were not similar to Gibson County. The trial court stated that "the whole basis for my opinion was that the communities are not similar." The trial court indicated that this finding was irrespective of Dr. Evans' knowledge about the Gibson County community, but was based on the characteristics of the Virginia communities, including population and proximity to a metropolitan area.

On September 14, 2010, the trial court issued an order denying Walker's motion to reconsider the order excluding Dr. Evans' expert testimony. The same day, the trial court issued an order granting Dr. Garabedian's motion for summary judgment. The trial court noted that Dr. Garabedian had submitted proof that he did not breach the applicable standard of care, in the form of Dr. Garabedian's affidavit to that effect. The exclusion of the testimony of Walker's expert, Dr. Evans, left Walker "unable to demonstrate through competent expert proof that there is a genuine issue of material fact as to whether Dr.

Garabedian breached the applicable standard of care." On this basis, the trial court granted summary judgment in favor of Dr. Garabedian. Walker now appeals.

**ISSUES ON APPEAL AND STANDARD OF REVIEW**

On appeal, Walker submits three issues for review. First, Walker asks this Court to determine whether the similarity of two communities, as opposed to the applicable standard of professional practice, is a question of fact or a question of law. Second, we are asked to determine where the line is drawn between (a) the *existence* of community similarity and (b) the *degree or extent* of community similarity, as an indicator of evidence weight or credibility. Finally, Walker asks this Court to consider whether the compared communities in this case meet the minimum threshold of demonstrated similarity.

A trial court's decision to accept or disqualify an expert medical witness is reviewed under the abuse of discretion standard. *Shipley v. Willams*, 350 S.W.3d 527, 552 (Tenn. 2011); *State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002). A trial court abuses its discretion when it applies an incorrect legal standard, or reaches a decision that is against logic or reasoning and has caused an injustice to the complaining party. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Under *Shipley*, a trial court also abuses its discretion when it disqualifies a witness who meets the competency requirements of Section 29-16-115(b) or excludes testimony that meets the requirements of Rule 702 and 703. *Shipley*, 350 S.W.3d at 552.

The trial court's decision on a motion for summary judgment is a question of law, reviewed *de novo* with no presumption of correctness. *Hall v. Haynes*, 319 S.W.3d 564, 571 (Tenn. 2010); *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 226 (Tenn. 2010). A trial court may properly grant a motion for summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In deciding a motion for summary judgment, a trial court should not weigh evidence, but must accept the nonmoving party's evidence as true and view both the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the nonmoving party. *Shipley*, 350 S.W.3d at 551; *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn 2008).

**ANALYSIS**

At the outset, we note that, on August 11, 2011, after the parties filed their appellate briefs in this case but shortly before oral argument, the Tennessee Supreme Court issued its decision in *Shipley v. Williams*, addressing the qualification of expert medical witnesses

under Tennessee Code Annotated § 29-26-115. ***See Shipley v. Williams***, 350 S.W.3d 527, 550-54 (Tenn. 2011). As a result, the parties, and this Court, must change tack somewhat to address the issues in light of ***Shipley***. We will briefly address the pertinent elements of proof in a medical malpractice lawsuit and then address how ***Shipley*** affects our consideration of the issues in this appeal.

As noted in ***Shipley***, Section 29-26-115(a), sets forth the elements of proof in a medical malpractice claim:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a) (Supp. 2011); ***Shipley***, 350 S.W.3d at 550. Subsection (b) of this statute states the requirements for competency of a medical expert:

> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann.§ 29-26-115 (Supp. 2011); ***Shipley***, 350 S.W.3d at 550.

In this case, it is undisputed that Dr. Evans was licensed to practice medicine in a contiguous bordering state, namely, Virginia, in the time frame set forth in Section 29-26-115(b). The trial court found that Dr. Evans' medical specialty made his expert testimony relevant to the

issues in the case, as required under subsection (b), and this finding is not challenged on appeal. In the hearing on Walker's motion to reconsider the order excluding Dr. Evans' testimony, the trial court explained that its decision was based on a finding that the communities Walker sought to compare to Gibson County, Midlothian and Hopewell, Virginia, were not similar to Gibson County. As set forth above, this is pursuant to Section 29-26-115(a)(1), which requires a medical malpractice claimant to establish the applicable "standard of acceptable professional practice . . . in the community in which the defendant practices or in a similar community," generally referred to as the "locality rule." Tenn. Code Ann. § 29-26-115(a)(1); *see Shipley*, 350 S.W.3d at 552. We focus, then, on the impact of *Shipley* on the analysis of whether Dr. Evans was competent under the locality rule to testify about the standard of care in Gibson County or in a community similar to Gibson County.

In *Shipley*, the Court squarely addressed the locality rule; it first outlined its history and then reviewed the decisions by our Supreme Court and by the intermediate appellate court, applying and judicially defining the rule. *Shipley*, 350 S.W.3d at 536-54. After doing so, the Court in *Shipley* discussed how Tennessee courts interpreting the locality rule had gone awry in their analysis.

*Shipley* first emphasized that the trial court, in its historic role as gatekeeper, does not weigh the evidence prior to trial, but utilizes its discretion to determine if evidence, including expert testimony, will be admitted at trial. *Id.* at 551. With respect to the evaluation of proof of what constitutes a "similar community" under Section 29-26-115(a)(1), *Shipley* stated:

> Principles of *stare decisis* compel us to adhere to the requirement that a medical expert must demonstrate a modicum of familiarity with the medical community in which the defendant practices or a similar community. Generally, an expert's testimony that he or she has reviewed and is familiar with pertinent statistical information such as community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area; has discussed with other medical providers in the pertinent community or a neighboring one regarding the applicable standard of care relevant to the issues presented; or has visited the community or hospital where the defendant practices, will be sufficient to establish the expert's testimony as relevant and probative to "substantially assist the trier of fact to understand the evidence or to determine a fact in issue" under Tennessee Rule of Evidence 702 in a medical malpractice case and to demonstrate that the facts on which the proffered expert relies are trustworthy pursuant to Tennessee Rule of Evidence 703.

***Shipley,*** 350 S.W.3d at 552. Next, ***Shipley*** expressly rejected the requirement that a medical expert have "personal, firsthand, direct knowledge" of the standard of care in the defendant's community in order to offer expert testimony on that standard, as set forth in decisions by some of Tennessee's intermediate appellate courts.[3] ***Shipley***, 350 S.W.3d at 552. ***Shipley*** explained this holding:

> [T]he "personal, firsthand, direct knowledge"standard set forth in ***Eckler*** and ***Allen*** is too restrictive. There is substantial Tennessee precedent allowing experts to become qualified by educating themselves by various means on the characteristics of a Tennessee medical community. ***See Stovall***, 113 S.W.3d at 723; ***Searle [v. Bryant]***, 713 S.W.2d [62] at 64-65 [(Tenn. 1986)]; ***Taylor [v. Jackson-Madison Co. Gen. Hosp. Dist.]***, 231 S.W.3d [361] at 368-71 [(Tenn. Ct. App. 2006)]; ***Pullum v. Robinette***, 174 S.W.3d 124, 132-33 (Tenn. Ct. App. 2004); ***Bravo [v. Summer Reg'l Health Sys.]***, 148 S.W.3d [357] at 360-61 [(Tenn. Ct. App. 2003)]; ***Ledford [v. Moskowitz]***, 742 S.W.2d [645] at 648 [(Tenn. Ct. App. 1987)]. A proffered medical expert is not required to demonstrate "firsthand" and "direct" knowledge of a medical community and the appropriate standard of medical care there in order to qualify as competent to testify in a medical malpractice case. A proffered expert may educate himself or herself on the characteristics of a medical community in order to provide competent testimony in a variety of ways, including but not limited to reading reference materials on pertinent statistical information such as community and/or hospital size and the number and type of medical facilities in the area, conversing with other medical providers in the pertinent community or a neighboring or similar one, visiting the community or hospital where the defendant practices, or other means. We expressly reject the "personal, firsthand, direct knowledge" standard formulated by the Court of Appeals in ***Eckler*** and ***Allen***.

***Id.*** at 552-53 (footnote omitted) (full citations inserted). ***Shipley*** then addressed expert medical testimony of a broad regional or national standard of care, finding that an expert who opines that a national standard of care applies should not be *per se* disqualified from offering testimony at trial. ***Id.*** at 553. ***Shipley*** then summarized the Court's holdings as follows:

---

[3] ***Shipley*** noted that this requirement was imposed by the intermediate appellate courts in the Western Section of Tennessee, citing ***Eckler v. Allen***, 231 S.W.3d 379 (Tenn. Ct. App. 2006) and ***Allen v. Methodist Healthcare Memphis Hosps.***, 237 S.W.3d 293 (Tenn. Ct. App. 2007), but was rejected by the intermediate appellate courts in the Eastern Section of Tennessee, citing ***Farley v. Oak Ridge Med. Imaging***, No. E2008-01731-COA-R3-CV, 2009 Tenn. App. LEXIS 540, at *32, 2009 WL 2474742, at *10 (Tenn. Ct. App. Aug. 13, 2009). ***Shipley***, 350 S.W.3d at 549-50.

In summary, (1) at the summary judgment stage of the proceedings, trial courts should not weigh the evidence but must view the testimony of a qualified expert proffered by the nonmoving party in the light most favorable to the nonmoving party. (2) A claimant is required to prove "[t]he recognized standard of acceptable professional practice . . . in the community in which the defendant practices or in a similar community." Tenn. Code Ann. § 29-26-115(a)(1). The medical expert or experts used by the claimant to satisfy this requirement must demonstrate some familiarity with the medical community in which the defendant practices, or a similar community, in order for the expert's testimony to be admissible under Rules 702 and 703. Generally, a competent expert's testimony that he or she has reviewed and is familiar with pertinent statistical information such as community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area; has had discussions with other medical providers in the pertinent community or a neighboring one regarding the applicable standard of care relevant to the issues presented; or has visited the community or hospital where the defendant practices, will be sufficient to establish the expert's testimony as admissible. (3) A medical expert is not required to demonstrate "firsthand" and "direct" knowledge of a medical community and the appropriate standard of medical care there in order to qualify as competent to testify in a medical malpractice case. A proffered expert may educate himself or herself on the characteristics of a medical community in a variety of ways, as we have already noted. (4) In addition to testimony indicating a familiarity with the local standard of care, a medical expert may testify that there is a broad regional standard or a national standard of medical care to which members of his or her profession and/or specialty must adhere, coupled with the expert's explanation of why the regional or national standard applies under the circumstances.

*Id.* at 554.

In oral argument in this appeal, which was held shortly after **Shipley** was rendered, the parties' counsel sought to frame the trial court's decision and the issues raised on appeal in light of **Shipley**. This Court has attempted, unsuccessfully, to resolve the issues raised on appeal without a remand to the trial court. We must reluctantly conclude that a remand is the only appropriate course of action under the circumstances. The standard utilized by the trial court below and the parties shifted substantially in the wake of **Shipley**, and given the trial court's discretion in determining the admissibility of evidence, the trial court should have the opportunity to reconsider its decision with the benefit of the argument of counsel on the

impact of ***Shipley***.  We note as well that the parties' discovery, the deposition of Dr. Evans, the pleadings and supporting affidavits surrounding Dr. Garabedian's motion *in limine* to exclude Dr. Evans' testimony and Dr. Garabedian's motion for summary judgment, all took place without consideration of the analysis in ***Shipley***.[4]  Therefore, the trial court may, in its discretion, permit the parties to submit amended pleadings or take additional discovery to address the standard explained in ***Shipley***.[5]

Therefore, we must vacate the trial court's July 9, 2010 order on Dr. Garabedian's motion *in limine*, its September 14, 2010 order on Walker's motion to reconsider the July 9, 2010 order, and the September 14, 2010 order granting summary judgment in favor of Dr. Garabedian.  We remand the case for reconsideration in light of ***Shipley v. Williams***, and for related further proceedings.

## CONCLUSION

The decision of the trial court is vacated as set forth above, and the cause is remanded for reconsideration in light of ***Shipley v. Williams***, and for further proceedings consistent with this Opinion.  Costs on appeal are assessed one-half against Appellant Tish Walker and her surety, and one-half against Appellee Dr. Shant Garabedian, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[4]We note that, under ***Shipley***, it is arguable that a medical expert such as Dr. Evans, despite never having practiced medicine in Tennessee, could become competent to testify about the standard of acceptable professional practice in Gibson County, and not just in a community that is similar to Gibson County. ***Shipley***, 350 S.W.3d at 552-53, 54.

[5]We note that ***Shipley*** addressed an expert's testimony as to a broader regional or national standard of care, and this was addressed in the trial court's July 9, 2010 order.  Although the trial court later clarified that its exclusion of Dr. Evans' expert testimony was based only on its finding that the compared Virginia communities were not similar to Gibson County, we recognize that the question of a broad standard of care may become an issue on remand.  The trial court is expressly authorized, in its discretion, to permit amended pleadings or additional discovery on this or any other issues raised by virtue of ***Shipley***.