IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 7, 2021 Session

IN RE A.W.

Appeal from the Chancery Court for Rutherford County
No. 18CV-1243     Darrell Scarlett, Judge
_____

No. M2020-00892-COA-R3-PT
_____

A mother and an unknown father were the subjects of a petition to terminate parental rights and to adopt a child. Only mother appeals. She argues that she lacked notice of the proceedings and that the petitioners failed to comply with the parental termination statutes. She also contests the statutory grounds relied on for terminating her parental rights and the trial court's determination that termination was in her child's best interest. We affirm the termination of the mother's parental rights. But because the record does not reflect that the unknown father was served under the Tennessee Rules of Civil Procedure or the statutes governing substituted service, we vacate the judgment terminating his parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Vacated in Part**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Catherine T. Mekis, Murfreesboro, Tennessee, for the appellant, Angela W.

Rebecca L. Lashbrook, Murfreesboro, Tennessee, for the appellees, T.G. and A.G.

**OPINION**

**I.**

**A.**

T.G and A.G. (together, "Petitioners") met Angela W. ("Mother") and her five-year-old daughter, A.W., when Mother and A.W. began attending Petitioners' church. Soon

after, Mother stood up in church and asked for assistance caring for her child at night. A.G., who ran a daycare out of the home she shared with T.G., offered to help. And that is how A.W. began living with Petitioners. As A.G. later explained, after picking up A.W. on January 8, 2016, "[s]he stayed with us that weekend, and pretty much has stayed since." Although A.G. acknowledged that the child would sometimes stay overnight with Mother after that time, the last time being in January 2017.

Mother's absences led Petitioners to file a dependency and neglect petition against Mother. In January 2018, a juvenile court found by clear and convincing evidence that A.W. was dependent and neglected in Mother's care and awarded custody to Petitioners.

In July of that same year, Petitioners petitioned to terminate the parental rights of Mother and an "unknown father" and to adopt A.W. *See* Tenn. Code Ann. § 36-1-113(b)(1) (Supp. 2018) (granting the "prospective adoptive . . . parents . . . standing to file a petition . . . to terminate parental . . . rights"). By that point, Petitioners last contact with Mother was nearly nine months ago. As grounds for terminating Mother's parental rights, the petition alleged abandonment by failure to support, abandonment by failure to visit, persistence of conditions, and failure to manifest an ability and willingness to assume custody or financial responsibility of the child. As to abandonment, the petition claimed that Mother willfully failed to support or visit A.W. "for a period in excess of four (4) months."

At the time the petition was filed, Mother was incarcerated. She wrote a letter from the detention center, which the trial court treated as her responsive pleading. According to the letter, Mother was unwilling to "completely" give up A.W and wanted to remain part of her child's life. Mother's release date was within a few months, and she was "waiting to be approved for treatment." She was "trying to better [her]self."

The court held a trial on the petition. Appointed counsel appeared on behalf of Mother, but Mother did not. The only witnesses were Petitioners and a friend of Petitioners who attended the same church. The testimony established how A.W. came under Petitioners' care, the frequency or infrequency of Mother's contact with her child and Petitioners, and how A.W. was fairing. Petitioners also introduced evidence of Mother's "extensive criminal history." She had been in and out of prison since A.W. was placed in Petitioners' care. And she had pending charges at the time of the trial.

After the trial, the court terminated Mother's and the unknown father's parental rights. With respect to Mother, the court concluded that she abandoned A.W. both by failure to visit and by failure to support. In concluding that A.W. was abandoned, the court determined that the relevant time period for evaluating Mother's visitation and support was the four-month period preceding the filing of the petition to terminate. *See id.* § 36-1-102(1)(A)(i) (Supp. 2018) (defining "abandonment" as the willful failure to visit or the willful failure to support "[f]or a period of four (4) consecutive months immediately

2

preceding the filing of a proceeding [or] pleading . . . to terminate the parental rights of the parent or parents"). The court made no determination regarding the other grounds alleged for terminating Mother's parental rights.

The court also concluded that termination of Mother's parental rights was in A.W.'s best interest. In its best interest analysis, the court did not articulate its reasoning. The court only noted that it had considered the relevant statutory factors.

Mother moved to alter or amend the court's judgment or, alternatively, for a new trial. She claimed that she was incarcerated when the petition to terminate was filed and did not receive the notice due to incarcerated parents under the parental termination statutes. *See id.* § 36-1-113(f). She also claimed that she did not receive notice of the trial date "due to relocation and lack of mail forwarding." And she argued that, due to her incarceration, the court analyzed the abandonment ground incorrectly by looking at the wrong four-month period.

Petitioners also moved to alter or amend the court's judgment. Seemingly agreeing with one of the points made by Mother, Petitioners asked that the judgment terminating parental rights "be altered and/or amended with regard to the statutory time frame utilized by [the court]" as it related to the ground of abandonment.

The court granted Petitioners' motion but denied Mother's. The court amended its judgment to reflect that the relevant four-month period in determining abandonment was the four-month period preceding Mother's incarceration. As for Mother's notice arguments, the court found that Mother "had notice of the[] proceedings and failed to appear at trial." And Mother willfully failed "to appropriately communicate her whereabouts to her . . . counsel."

B.

Mother appealed. *See In re A.W.*, No. M2019-00358-COA-R3-PT, 2020 WL 95690 (Tenn. Ct. App. Jan. 8, 2020). This Court determined that the judgment terminating the parental rights of Mother and the unknown father was not final because the judgment failed to address two of the four grounds Petitioners alleged for terminating parental rights. *Id.* at *3. So we dismissed the appeal, and we remanded the case for consideration of the two grounds left unaddressed in the judgment. *Id.* We also remanded for specific findings of fact and conclusions of law on the court's best interest analysis. *Id.*

On remand, the court again terminated Mother's and the unknown father's parental rights. With respect to Mother, the court once more concluded that Mother had abandoned her child both by failure to visit and by failure to support during the four-month period preceding her incarceration. The court also concluded that the two grounds left unaddressed previously—persistence of conditions and failure to manifest an ability and

3

willingness to assume custody or financial responsibility of the child—applied to Mother. And the court analyzed the statutory best interest factors, concluding that termination of Mother's rights was in A.W.'s best interest. This appeal by Mother followed.

## II.

Before addressing Mother's issues on appeal, we consider the parental rights of the "unknown father." Although Mother has not contested the termination of unknown father's rights, "Rules 13(b) and 36(a) of the Tennessee Rules of Appellate Procedure, considered together, give appellate courts considerable discretion to consider issues that have not been properly presented in order to achieve fairness and justice." *In re Kaliyah S.*, 455 S.W.3d 533, 540 (Tenn. 2015) (footnote omitted). And we have previously concluded that due process sometimes demands that we consider the rights of a parent who is not a party to an appeal from the termination of parental rights. *See In re Stormie M.*, No. M2015-02336-COA-R3-PT, 2016 WL 5025999, at *8 (Tenn. Ct. App. Sept. 15, 2016); *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *4 (Tenn. Ct. App. June 3, 2003).

Unless they have surrendered their parental rights, already had their parental rights terminated by court order, or are subject to a separate termination proceeding, both parents must be made parties to an adoption proceeding. Tenn. Code Ann. § 36-1-117(a) (Supp. 2018). Service of process must "be made pursuant to the Tennessee Rules of Civil Procedure and the statutes governing substituted service." *Id.* § 36-1-117(m)(1). Under the Tennessee Rules of Civil Procedure, "'the preferred method of service upon an individual . . . is clearly by delivery of the summons and complaint to the defendant personally.'" *Hall v. Haynes*, 319 S.W.3d 564, 572 (Tenn. 2010) (quoting Robert Banks, Jr. & June F. Entman, TENNESSEE CIVIL PROCEDURE § 2-3(d), at 2-26 (2d ed. 2004)); *see* TENN. R. CIV. P. 4.04(1).

In chancery court, personal service may be dispensed with when the name or residence of the defendant "is unknown and cannot be ascertained upon diligent inquiry." Tenn. Code Ann. § 21-1-203(a)(4)-(5) (2009). But, when personal service is dispensed with because the name or residence of the defendant is unknown and cannot be ascertained upon diligent inquiry, service by publication is required. *See id.* § 21-1-204 (2009). In adoption and termination proceedings, "[a]ny motion for an order of publication . . . [must] be accompanied by an affidavit of the petitioners or their legal counsel attesting, in detail, to all efforts to determine the identity and whereabouts of the parties against whom substituted service is sought." *Id.* § 37-1-117(m)(3). The court must then hold an evidentiary hearing to determine "whether a name and address are reasonably ascertainable[] or can be found with diligent inquiry." *Adoption Place, Inc. v. Doe*, 273 S.W.3d 142, 148 (Tenn. Ct. App. 2007).

Here, not surprisingly, the record contains no evidence that Petitioners attempted to personally serve anyone other than Mother. In their petition to terminate, Petitioners quote

4

a juvenile court finding "that no known biological father is available in these proceedings, nor is one listed on the minor child's birth certificate." And Petitioners request that service upon the unknown father "not be required."[1]

In its order terminating the unknown father's parental rights, the court found that, based on Mother engaging in prostitution at the time of the conception of her child, "the identity of the Biological Father is unknown and not ascertainable." But the order makes no mention of Petitioners' efforts to ascertain the father's identity or whereabouts other than speaking with Mother and examining the putative father registry. And the order does not indicate that the unknown father was served by publication. The record contains no order for publication.

Service of process is not just a "perfunctory act"—it has "constitutional dimensions." *Turner v. Turner*, 473 S.W.3d 257, 274 (Tenn. 2015) (quoting *In re Z.J.S.*, 2003 WL 21266854, at *6). In sum,

> Tennessee statutes authorize dispensing with personal service of process in a proceeding to terminate parental rights only if: (1) "the defendant's residence is unknown and cannot be ascertained upon *diligent inquiry*," Tenn. Code Ann. § 21-1-203(a)(5); **and** (2) the plaintiff has asked for an order authorizing constructive service by publication and has supported the request with an affidavit "attesting, in detail, to all efforts to determine the identity and whereabouts of the parties against whom substituted service is sought." Tenn. Code Ann. § 36-1-117(m)(3).

*Id.* (emphasis added). That did not happen. Because the unknown father was not served under the Tennessee Rules of Civil Procedure or the statutes governing substituted service, we vacate the termination of his parental rights.

### III.

Mother raises five issues on appeal. The first three relate to notice and her failure to appear for trial, issues also raised in Mother's motion to alter or amend the court's

---

[1] Parties should be "given fair notice and an opportunity to be heard on . . . dispositive issues." *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000). In other circumstances, we would ask the parties to brief the issue of lack of service of process. But the Petitioners' explicit request that the unknown father not be served with process convinces us that additional briefing on this issue would not be helpful. *Cf. In re David S.*, No. E2019-01190-COA-R3-PT, 2020 WL 1303733, at *16 (Tenn. Ct. App. Mar. 18, 2020) (McBrayer, J., concurring in part and dissenting in part) (recognizing that, when the Court raises an issue sua sponte over proper service of a parent by substitute service, the parties should be notified of the issue and briefing requested before the Court acts).

judgment or, alternatively, for a new trial. So we address those together before addressing her challenge to the grounds for terminating her parental rights and her challenge to the court's best interest analysis.

A.

Mother argues that she deserves a new trial because she did not have actual notice of the proceedings under Tennessee Code Annotated § 36-1-113(f). Under the statute, a parent "who is incarcerated or who was incarcerated at the time [a petition to terminate parental rights is filed]" is entitled to "actual notice" of certain facts:

> (1) The time and place of the hearing to terminate parental rights;
> (2) That the hearing will determine whether the rights of the incarcerated parent or guardian should be terminated;
> (3) That the incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian should be terminated, and, at the discretion of the court, such participation may be achieved through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances;
> (4) That if the incarcerated parent or guardian wishes to participate in the hearing and contest the allegation, such parent or guardian:
>
> > (A) If indigent, will be provided with a court-appointed attorney to assist the parent or guardian in contesting the allegation; and
> > (B) Shall have the right to perpetuate such person's testimony or that of any witness by means of depositions or interrogatories as provided by the Tennessee Rules of Civil Procedure; and
>
> (5) If, by means of a signed waiver, the court determines that the incarcerated parent or guardian has voluntarily waived the right to participate in the hearing and contest the allegation, or if such parent or guardian takes no action after receiving notice of such rights, the court may proceed with such action without the parent's or guardian's participation.

Tenn. Code Ann. § 36-1-113(f) (Supp. 2018). She contends that the record is unclear as to when and with what documents she was served. So, Mother claims, she was not properly served with process.

Mother was incarcerated when the petition to terminate her parental rights was filed, but her argument is founded on a faulty premise—that "[t]here is no returned Summons in the record evidencing she was served with process." The record does include a return of service. The return of service shows that Mother accepted service of the termination

6

petition, as well as other relevant documents, on a specific date at a certain time. And Mother's letter from the detention center—bearing the same date—also acknowledged receipt of the summons paperwork. Mother was properly served with process, and save for the date of trial, the petition and other relevant documents included the notices required under Tennessee Code Annotated § 36-1-113(f).

Mother also claims that she lacked sufficient notice of the trial date. Due process requires that "all parties to litigation . . . receive notice of important hearings and other proceedings." *Bryant v. Edwards*, 707 S.W.2d 868, 870 (Tenn. 1986). And the notice must be "reasonably calculated[,] under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Keisling v. Keisling*, 92 S.W.3d 374, 377 (Tenn. 2002) (citation omitted).

Here, the parties set the trial date by agreement. Mother's counsel mailed the agreed order setting the trial date to Mother's last known address. According to Mother, she had relocated from that address. Mother acknowledges that she had a duty to advise her counsel of any changes in address but failed to so. And, generally, mailing notice of the trial date to the parent's last-known address satisfies due process. *See In re Z.J.S.*, 2003 WL 21266854, at *6 (citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983); *Sunburst Bank v. Patterson*, 971 S.W.2d 1, 5 (Tenn. Ct. App. 1997)); *Pell v. City of Chattanooga*, No. E1999-01712-COA-R3-CV, 2000 WL 567821, at *5 (Tenn. Ct. App. May 9, 2000); *see also* TENN. R. CIV. P. 5.02(1) ("Service on [a party's] attorney or on a party may be made . . . by mailing it to such person's last known address . . . ."). But this situation is complicated by the fact that the agreed order setting the trial date was submitted only a week before the trial date; the court actually entered the agreed order the day before trial.

We conclude that the notice to Mother satisfied due process. As Mother acknowledges, the trial date was rescheduled from an earlier agreed date. In September 2018, Mother, through her counsel, agreed to set the trial for December 5, 2018. On December 5, counsel for the parties, the guardian ad litem, and Petitioners appeared for trial; Mother did not. But, because the court could not proceed with the trial due to a scheduling conflict, all counsel agreed to a continuance, resetting the case for December 14. Mother makes no contention that she was unaware of the December 5 trial date. And the evidence at trial suggested that she was aware of the ongoing proceeding; Mother called Petitioners two days before the trial date to speak with them about arranging for visitation. Based on the evidence, the court found that her failure to appear as well as her failure to communicate with her counsel was willful.

Mother sought to alter or amend the judgment terminating her parental rights or, alternatively, a new trial on the basis of "mistake, inadvertence, or excusable neglect." *See* TENN. R. CIV. P. 59. Because of the basis of her motion, her willfulness in failing to appear was a threshold inquiry. *Discover Bank v. Morgan*, 363 S.W.3d 479, 493-494 (Tenn.

7

2012). The court correctly assessed the evidence, finding that Mother acted willfully, and we discern no abuse of discretion in its denial of Mother's motion to alter or amend or for a new trial. *See id.*

B.

Tennessee Code Annotated § 36-1-113 sets forth both the grounds and procedures for terminating parental rights. *In re Kaliyah S.*, 455 S.W.3d at 546. Parties seeking termination of parental rights must first prove the existence of at least one of the statutory grounds for termination listed in Tennessee Code Annotated § 36-1-113(g). Tenn. Code Ann. § 36-1-113(c)(1). If one or more statutory grounds for termination are shown, they then must prove that terminating parental rights is in the child's best interest. *Id.* § 36-1-113(c)(2).

Because of the constitutional dimension of the rights at stake in a termination proceeding, parties seeking to terminate parental rights must prove both the grounds and the child's best interest by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808-09 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). This heightened burden of proof serves "to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights." *Id.* "Clear and convincing evidence" leaves "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Bernard T.*, 319 S.W.3d at 596.

We review the trial court's findings of fact "de novo on the record, with a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise." *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); TENN. R. APP. P. 13(d). We then "make [our] own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." *In re Bernard T.*, 319 S.W.3d at 596-97. We review the trial court's conclusions of law de novo with no presumption of correctness. *In re J.C.D.*, 254 S.W.3d 432, 439 (Tenn. Ct. App. 2007).

The court terminated Mother's parental rights on the grounds of abandonment by failure to visit, abandonment by failure to support, persistence of conditions, and failure to manifest an ability and willingness to assume custody or financial responsibility of the child. Mother contends that none of the grounds were supported by clear and convincing evidence.

8

1. Abandonment

One of the statutory grounds for termination of parental rights is "[a]bandonment by the parent." Tenn. Code Ann. § 36-1-113(g)(1). There are "five alternative definitions for abandonment as a ground for the termination of parental rights." *In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005); *see also* Tenn. Code Ann. § 36-1-102(1)(A) (defining the term "abandonment"). One definition asks whether the parent has failed to visit, support, or make reasonable payments toward the support of the child during the four-month period preceding the filing of the petition to terminate parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(i). Another definition applies in cases in which the parent is incarcerated or had been incarcerated within the four-month period preceding the filing of the termination petition. *Id.* § 36-1-102(1)(A)(iv). In such cases, the question remains whether the parent has failed to visit or support the child. *Id.* But the focus shifts to the four-month period "immediately preceding [the] parent's . . . incarceration." *Id.*

Mother was incarcerated at the time the petition to terminate her parental rights was filed. So the appropriate period for determining abandonment was the four-month period preceding her incarceration. *See id.* But, in alleging abandonment, the petition claimed only that Mother had willfully failed to visit or support A.W. "for a period in excess of four (4) months." It did not specify the four-month period preceding Mother's incarceration.

Notice is "a fundamental component of due process." *In re W.B., IV*, M2004-00999-COA-R3-PT, 2005 WL 1021618, at *13 (Tenn. Ct. App. Apr. 29, 2005); *see also Keisling*, 92 S.W.3d at 377. In the context of parental termination, due process requires that the parent be notified of the alleged grounds for termination. *In re Jeremiah N.*, No. E2016-00371-COA-R3-PT, 2017 WL 1655612, at *8 (Tenn. Ct. App. May 2, 2017). Generally, parental rights can only be terminated on grounds that were alleged in the termination petition. *See In re M.J.B.*, 140 S.W.3d 643, 655-56 (Tenn. Ct. App. 2004). Pleadings should give the opposing party enough notice of the issues to prepare a defense. *Keisling*, 92 S.W.3d at 377. When pleading abandonment, a petition is "deficient" if it pleads the "'wrong' four-month statutory period." *In re Samuel R.*, No. W2017-01359-COA-R3-PT, 2018 WL 2203226, at *13 (Tenn. Ct. App. May 14, 2018) (quoting *In re D.H.B.*, No. E2014-00063-COA-R3-PT, 2015 WL 1870303, at *5 (Tenn. Ct. App. Apr. 23, 2015)); *see also In re K.N.B.*, No. E2014-00191-COA-R3-PT, 2014 WL 4908505, at *13 (Tenn. Ct. App. Sept. 30, 2014). Even so, an unpled ground for termination may be tried by implied consent. *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 n.3 (Tenn. 2013); *In re Alysia S.*, 460 S.W.3d 536, 564 (Tenn. Ct. App. 2014).

Here, the petition is deficient in pleading abandonment by an incarcerated parent. It did not plead the correct four-month statutory period. And the correct ground was not tried by implied consent. The questions and arguments from counsel show that the parties were focused on the wrong statutory period throughout trial. The court's written and oral ruling also reflected the wrong statutory period. In short, "[n]o one appeared to recognize

that the wrong four-month period was being tried." *See In re Samuel R.*, 2018 WL 2203226, at *14. Only once Petitioners moved to alter or amend the court's judgment with the correct statutory period did anyone realize that they had tried an inapplicable ground. *See id.* (concluding that abandonment by an incarcerated parent was not tried by implied consent where the trial judge only "recognize[d] that the wrong four-month period was being tried . . . during closing arguments").

The applicable ground of abandonment was neither properly pleaded nor tried by implied consent. So Mother's parental rights could not be terminated on the ground of abandonment by an incarcerated parent by failure to visit or failure to support.

2. Persistence of Conditions

The trial court also found termination of Mother's parental rights appropriate under Tennessee Code Annotated § 36-1-113(g)(3), a ground commonly referred to as "persistence of conditions." *See In re Audrey S.*, 182 S.W.3d at 871. This ground applies only where there "is evidence of a 'prior court order removing the child from the parent's home . . . based on a judicial finding of dependency, neglect or abuse." *In re Aiden R.*, No. E2015-01799-COA-R3-PT, 2016 WL 3564313, at *9 (Tenn. Ct. App. June 23, 2016) (quoting *In re Audrey S.*, 182 S.W.3d at 874).

At the trial of the petition to terminate Mother's parental rights, Petitioners only testified that they were granted custody of A.W. through a previous dependency and neglect action. There was no testimony as to how long Petitioners formally had custody of A.W. *See* Tenn. Code Ann. § 36-1-113(g)(3)(A) (requiring that the child be "removed from the home or . . . custody of [the] parent . . . for a period of six (6) months"). Nor was there testimony referencing the custody order or that the order made a finding of dependency and neglect. *See id.* Although the custody order is in the record, it was only an exhibit to the petition to terminate. Exhibits attached to a pleading "are a part of the pleading." *Ragsdale v. City of Memphis*, 70 S.W.3d 56, 62 (Tenn. Ct. App. 2001). And pleadings are not evidence. *See Hillhaven Corp. v. State ex rel. Manor Care, Inc.*, 565 S.W.2d 210, 212 (Tenn. 1978); *Price v. Mercury Supply Co.*, 682 S.W.2d 924, 929 n.5 (Tenn. Ct. App. 1984).

Parties relying on the ground of persistence of conditions should introduce a certified copy of the prior court order that made a finding of dependency, neglect, or abuse into evidence during the termination proceeding. *See* TENN. R. EVID. 803(8) (explaining that "records . . . of public offices . . . setting forth the activities of the office" are an exception to the hearsay rule). Because the order was not entered into evidence, "the evidence presented at trial [wa]s insufficient to support a termination of Mother's parental rights on the statutory ground of persistence of conditions." *See In re Haley S.*, No. M2017-00214-COA-R3-PT, 2018 WL 1560078, at *5 (Tenn. Ct. App. Mar. 29, 2018). So Mother's parental rights could not be terminated on this ground.

3. Failure to Manifest an Ability and Willingness to Assume Custody or Financial Responsibility of the Child

Finally, the court found termination of Mother's parental rights appropriate under Tennessee Code Annotated § 36-1-113(g)(14). Under this ground, a parent's rights may be terminated if he or she

> [1] has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and [2] placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). Both prongs must be established by clear and convincing evidence. *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020). As to the first prong, the petitioner may prove that a parent is either unable or unwilling to "assume legal and physical custody or financial responsibility of the child." *Id.* at 677.

We conclude that clear and convincing evidence showed that Mother failed to manifest an ability and willingness to assume custody and financial responsibility of A.W. By the trial date, A.W. had lived with Petitioners for almost three years.

Meanwhile, Mother was last known to be in a homeless shelter. She lacked her own means of transportation. She had also been in and out of jail during the year leading up to the hearing. Mother had pending charges at the time of the trial. And she had not visited with or contacted A.W. in any way for over a year. Mother never sent gifts or provided food, clothing, or any form of financial support. *See In re Ashlynn H.*, No. M2020-00469-COA-R3-PT, 2021 WL 2181655, at *6 (Tenn. Ct. App. May 28, 2021) (concluding that parent failed to manifest an ability or willingness to assume custody when the parent lacked steady employment, stable housing, or reliable transportation); *In re Tucker H.*, No. E2019-01970-COA-R3-PT, 2020 WL 1966320, at *12 (Tenn. Ct. App. Apr. 24, 2020) (reasoning that parent failed to manifest ability or willingness to parent when the parent was in and out of jail repeatedly and never visited the children); *In re Gaberiel S.*, No. M2018-00522-COA-R3-PT, 2018 WL 6523239, at *13 (Tenn. Ct. App. Dec. 11, 2018) (reasoning that parent who never paid child support or sent gifts to the children had failed to manifest an ability and willingness to assume financial responsibility for the children).

The evidence is equally clear and convincing that putting A.W. in Mother's custody would pose a risk of substantial harm to A.W.'s psychological welfare. A.W. was thriving in the custody of Petitioners. She was succeeding in school and participating in extracurricular activities. She had the love and support of the family. And she has a special bond with Petitioners' son. A.W. was as "happy as can be." At this point, Mother is a near

stranger. As Petitioners testified, returning the child to Mother "would tear [A.W.] apart." *See In re Mynajah S.*, No. E2021-00040-COA-R3-PT, 2021 WL 3520856, at *15 (Tenn. Ct. App. Aug. 11, 2021) (explaining that lack of contact with biological parent for the majority of her young life meant that the child "would likely suffer substantial psychological or emotional harm if returned to Mother's custody"); *In re Braelyn S.*, No. E2020-00043-COA-R3-PT, 2020 WL 4200088, at *17 (Tenn. Ct. App. July 22, 2020), *perm. app. denied*, (Tenn. 2020) (reasoning that returning the child to a "virtual stranger" in light of her strong bond with her current caregivers would constitute substantial harm).

## C.

Lastly, Mother argues that it was not in A.W.'s best interests to terminate her parental rights. Because "[n]ot all parental misconduct is irredeemable," our parental termination "statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interests." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005). So even if a statutory ground for termination is established by clear and convincing evidence, we must also determine whether termination of parental rights is in the child's best interests. Tennessee Code Annotated § 36-1-113(i) lists nine factors that courts must consider in making a best interest analysis. The "factors are illustrative, not exclusive, and any party to the termination proceeding is free to offer proof of any other factor relevant to the best interests analysis." *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017). In reaching a decision, "the court must consider all of the statutory factors, as well as any other relevant proof any party offers." *Id.* at 682. The best interest analysis is a fact-intensive inquiry, and each case is unique. *White v. Moody*, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004).

The first statutory factor focuses on whether the parent "has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent." Tenn. Code Ann. § 36-1-113(i)(1). The court found that Mother had not made such an adjustment. Mother was last known to be in a homeless shelter. She did not have stable housing or transportation. And she had an "extensive criminal history" that included pending charges at the time of the trial.

The second factor considers the parent's potential for lasting change "after reasonable efforts by available social services agencies." *Id.* § 36-1-113(i)(2). Because no social service agency was involved here, the trial court found this factor inapplicable. The third factor looks at whether the parent has maintained regular contact with the child. *Id.* § 36-1-113(i)(3). Mother's contact was never consistent. And she last contacted A.W. over a year before the trial. For the same reasons, Mother also lacked a "meaningful" relationship with A.W. under the fourth best interest factor. *See id.* § 36-1-113(i)(4). In A.W.'s eyes, Mother was not really "mom"—A.G. was.

The fifth factor considers the effect a change in caregivers would have on the child's emotional, psychological, and medical condition. *Id.* § 36-1-113(i)(5). As the trial court found, A.W. "is thriving in her current environment in all categories." She is happy and stable. Returning A.W. to Mother would emotionally "tear her apart."

The sixth factor asks whether the parent "has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child." *Id.* § 36-1-113(i)(6). The court found that A.W. was removed from Mother's custody and placed with Petitioners based on a finding of dependency and neglect. As noted above, the order finding A.W. dependent and neglected was not entered into evidence. So we agree with Mother that the court erred in this finding and in weighing this factor against Mother.

The seventh factor looks at the parent's home environment and whether the use of alcohol or other controlled substances would prevent the parent from properly caring for the child. *Id.* § 36-1-113(i)(7). The trial court weighed this factor against Mother because of her "significant criminal history." And, again, Mother did not have a stable home environment.

The eighth factor evaluates whether the parent's mental or emotional status prevents proper parenting. *Id.* § 36-1-113(i)(8). The trial court did not consider this factor relevant because there was no evidence either way. Lastly, the ninth factor examines the parent's child support history. *Id.* § 36-1-113(i)(9). Mother had provided no form of support since A.W. had been in Petitioners' care.

Although the evidence weighs against one of the court's factual findings, the evidence supports the court's other findings. We conclude that the proven facts amounted to clear and convincing evidence that termination of Mother's parental rights was in A.W.'s best interests.

**IV.**

We affirm the termination of Mother's parental rights. Mother was not denied due process, and Petitioners complied with the notice requirements for incarcerated parents in parental termination cases. We also conclude that there was clear and convincing evidence of one statutory ground for termination and that terminating parental rights was in the child's best interests.

We vacate the termination of the unknown father's parental rights. The unknown father was not served under the Tennessee Rules of Civil Procedure or the statutes governing substituted service. This case is remanded for further proceedings consistent with this opinion.

13

_____s/ W. Neal McBrayer_____
W. NEAL MCBRAYER, JUDGE