IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 4, 2024

## SAMSON K. ORUSA ET AL. v. FIRST NATIONAL BANK OF AMERICA

**Appeal from the Circuit Court for Montgomery County**
**No. CC-22-CV-2195        Kathryn Wall Olita, Judge**

_____

### No. M2023-01204-COA-R3-CV

_____

Homeowners sought to void the foreclosure sale of their home, asserting that the bank did not advertise the sale as required. The trial court granted the bank summary judgment, concluding that the bank was not properly served and that the foreclosure had been properly advertised. The homeowners appeal. We affirm based on failure of service of process.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KENNY W. ARMSTRONG, JJ., joined.

Abigail O. Orusa and Samson K. Orusa, Clarksville, Tennessee, pro se.

Mark T. Freeman and Kristen J. Johnson, Nashville, Tennessee, for the appellee, First National Bank of America.

### OPINION

#### I.

The underlying dispute in this case involves a foreclosure on real property. Samson and Abigail Orusa owned real property located in Montgomery County, Tennessee, and mortgaged to First National Bank of America (First National). Because the Orusas defaulted on their loan, First National held a foreclosure sale in November 2022. Notice of the foreclosure sale was published in "The Ledger" on October 7, 14, and 21, 2022, as well as in the online version of The Ledger and another online publication. No bidders appeared, and First National acquired the property for $788,706.57, which the Orusas assert is substantially less than its fair market value.

The Orusas allege that The Ledger was not actually circulated weekly within Montgomery County and that the use of that particular publication to advertise the foreclosure violated the parties' contract.[1] The Orusas sought injunctive relief and sought to void the sale based on inadequate publication. The parties agree that the Orusas filed suit and attempted to serve a summons on Mike Arthur, the loan officer who serviced the Orsuas' loan. The summons and the certified mail return receipt, however, are not contained in the record on appeal.

First National moved to dismiss, alleging that it was not properly served with process, that the publication of foreclosure was sufficient as a matter of law, and that the complaint otherwise failed to state a claim. Although it is unclear from the appellate record, it appears service by certified mail may have been attempted in Michigan. First National attached to its motion to dismiss a document tending to show that Mr. Arthur was not a registered agent of the bank in Michigan. First National also attached a notarized "proof of publication" signed by The Ledger's Chief Financial Officer, which asserted that The Ledger is a weekly newspaper of general circulation printed in the State of Tennessee and distributed throughout Montgomery County and that the notice of foreclosure appeared in it on three dates.

The Orusas filed a "Reply In Further Support of Their Motion for a Permanent Injunction," stating that they visited the supposed distribution sites of The Ledger in Clarksville, Montgomery County, between January 11 and 18, 2023, that they found no copies of the Ledger, and that numerous purported distribution sites revealed businesses that were closed or housed businesses other than those listed by the Ledger. They attached to their reply a list of businesses no longer operating and photographs of the facades of some of the businesses.

The trial court set the case to be heard on the pleadings on February 10, 2023. The Orusas objected and filed a motion attempting to set the matter for a hearing in August. The court denied the motion as unduly delaying the matter and set the matter for a hearing on March 31, 2023. The Orusas asserted they would be unavailable that day and largely unavailable for the next three months, due in part to Dr. Samson Orusa's federal trial for criminal offenses. The court heard arguments from First National on the March hearing date, but it allowed the Orusas to present their oral argument in May.

---

[1] The record contains a deed of trust which requires 20 days' notice through three publications in a newspaper published weekly in the county prior to a foreclosure sale. The Orusas and First National have subsequently referenced the requirements of Tennessee Code Annotated section 35-5-101(a), but this statutory provision is not mentioned in the complaint. *See also* Tenn. Code Ann. § 35-5-101(d) ("Nothing in this section shall be construed as applying to any notice published in accordance with any contract entered into heretofore, and expressed in a mortgage, deed of trust or other legal instruments.").

The court determined that First National's motion was more properly considered a motion for summary judgment, and ordered the matter to proceed under Rule 56.03. First National's trial counsel presented the Orusas with a statement of material "Facts" largely composed of legal conclusions,[2] primarily addressing the merits of issuing an injunction, and faulting the Orusas for a failure to provide "any attached exhibits" to the complaint. *But see* Tenn. R. Civ. P. 8.01 (requiring only a "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks"); *see also* Tenn. R. Civ. P. 10.03.

The Orusas disputed these legal conclusions couched as facts. In doing so, the Orusas asserted that Rule 4.05 does not require service on the registered agent, that they served First National at the address obtained from correspondence with the bank, that they properly served the "chief loan officer," and that the return was signed by Mr. Arthur. They further averred as undisputed facts: that The Ledger was not distributed weekly in the county; that The Ledger is not a publication because it is not actually circulated; that First National defrauded the Orusas of equity; and that the Orusas visited 71 distribution sites and found no copies of The Ledger. First National did not respond to these statements or dispute them.

The trial court granted summary judgment to First National. It did so on two bases. First, regarding service of process, the trial court determined that

> Mike Arthur is not a registered agent for service of process on [First National] in the State of Michigan. *See* Exhibit A to Defendant's Motion to Dismiss. Indeed, Plaintiffs admit that Mike Arthur is a loan officer who has been handling Plaintiffs' business with the bank. As such, the summons itself is defective on its face. In addition, the return on service reflects that Mike Arthur did not actually sign the registered receipt. Someone named Larry Loveless did. Larry Loveless is not a registered agent for service of process on [First National]in the State of Michigan. *See* Exhibit A to Defendant's Motion to Dismiss. Plaintiffs have failed to show that either Mr. Arthur or Mr. Loveless is a proper person to accept service of process on behalf of [First National]. Therefore, service of process is also defective.

Second, regarding public notice, the trial court determined that

> On its very face, the Proof of Publication shows that Defendant published notice at the correct time, for the correct number of times, and in a publication that was in general circulation throughout Montgomery County. The Court

---

[2] For instance, the only statements of "fact" related to service are: "Plaintiffs' Complaint was sent with a defective summons"; "Service of process is insufficient due to the insufficiency of process detailed above"; and "This Court does not have personal jurisdiction over [First National]."

finds Defendant provided adequate notice of the foreclosure proceedings as required by Tenn. Code Ann. § 35-5-101.  Plaintiffs have alleged that The Ledger is the entity that has committed fraud, not [First National].  Plaintiff has attached numerous photos showing locations where The Ledger is not located, though the Court notes the photos don't show anything other than the exterior of local businesses.  Further, Plaintiffs' visits to these locations was from January 11 - 18, 2023, months after publication was made.  Based upon all of the foregoing, Plaintiffs have failed to plausibly plead that the public notice was improper.

Having reached these conclusions, the trial court awarded summary judgment to First National on both of these bases.

The Orusas appealed.  On appeal, they contend the trial court erred in finding that they did not properly serve First National.  They also argue that the trial court erred in finding that the notice through publication was adequate.

Responding to the Orusas' briefing, First National seeks dismissal of the appeal based on violations of the Rules of Appellate Procedure, including 1) a failure to include a table of contents in the appellants' brief, 2) failure to set forth a statement of issues presented for review, 3) failure to appropriately reference the record, and 4) failure to include the proper color for the cover of the appellants' brief.  First National argues in the alternative that the summary judgment should be affirmed because service of process on an individual who was not a registered agent for service was insufficient and because the notice of foreclosure by publication was adequate.  The Orusas filed a reply, disputing that any Rule violations were material or hampered review.

II.

The Orusas are proceeding pro se in this appeal.  Pro se litigants "are entitled to fair and equal treatment by the courts." *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 551 (Tenn. Ct. App. 2015).  Courts should be mindful that pro se litigants often lack any legal training and many are unfamiliar with the justice system.  *State v. Sprunger*, 458 S.W.3d 482, 491 (Tenn. 2015).  Accordingly, courts should afford some degree of leeway in considering the briefing from a pro se litigant, *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003), and should consider the substance of the pro se litigant's filing. *Poursaied v. Tennessee Bd. of Nursing*, 643 S.W.3d 157, 165 (Tenn. Ct. App. 2021).  Pro se litigants, however, may not "shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000).  Additionally, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010).  In considering appeals from pro se litigants, the court cannot write the litigants' briefs for them, create arguments, or "dig through the record in an attempt to

discover arguments or issues that [they] may have made had they been represented by counsel." *Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014). It is imperative that courts remain "mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

III.

Because of the foundational nature of First National's contention that deficiencies in the Orusas' briefing should result in dismissal of the Orusas' appeal, we turn first to considering this argument. First National correctly observes that the Orusas' briefing has a number of deficiencies, including no page numbers listed in the table of contents and shortcomings as to the statement of the issues on appeal. Nevertheless, First National understood from the briefing that the Orusas are challenging the trial court's rulings that the publication of the foreclosure was sufficient and that their service of process on the bank was insufficient. From our review of the briefing, we agree that these are the issues raised in the Orusas' brief. Furthermore, their brief does generally contain record citations, and we observe that the brevity of their brief mitigates the inconvenience of the improper table of contents.

The Tennessee Supreme Court has noted that "[o]ur appellate courts should not decline to address a clearly presented argument that falls within the scope of the stated issues simply because the stated issues were not crafted as precisely as they could have been." *Trezevant v. Trezevant*, 696 S.W.3d 527, 531 (Tenn. 2024). Furthermore, with regard to transgressions of the Tennessee Rules of Appellate Procedure, the Tennessee Supreme Court "has repeatedly emphasized that the overall intent of the appellate rules is 'to disregard technicality in form in order to determine every appellate proceeding on its merits.'" *DiNovo v. Binkley*, 706 S.W.3d 334, 336 (Tenn. 2025) (quoting *Trezevant*, 696 S.W.3d at 530). "Tennessee courts must reasonably exercise their discretion to excuse technical deficiencies that do not significantly impede the appellate process." *Id.* Accordingly, when a violation does not prejudice the opposing party or "otherwise frustrate. . . meaningful appellate review," this court may disregard technical deficiencies. *Id.* In this case, though there are deficiencies in the Orusas' briefing in violation of the Tennessee Rules of Appellate Procedure, the briefing deficiencies have not been prejudicial to the other party or to the administration of justice, nor have the deficiencies in the present case shifted this court from its proper role of serving as a neutral reviewer to essentially lawyering for one of the parties in the case. Accordingly, we proceed to considering the Orusa's arguments despite these deficiencies. *See, e.g.*, *Trezevant*, 696 S.W.3d at 531 (noting that "an appellant that broadly asserts error in the statement of issues and presents an argument that leaves the opposing party guessing at the issues to which it must respond, or leaves the reviewing court scouring the record for reversible errors, risks having its issues waived"); *Hamadani v. Meshreky*, No. M2023-01161-COA-R3-CV, 2024 WL 3466977, at *3 (Tenn. Ct. App. July 19, 2024) (declining to consider the merits based

upon a Rule 27 violation where the nature of the violation was such that "[t]o consider this appeal on the merits would necessitate shifting this court's role on appeal from neutral reviewer to advocate for the appellant"); *Etheredge v. Estate of Etheredge*, No. M2022-00451-COA-R3-CV, 2023 WL 5367681, at *4 (Tenn. Ct. App. Aug. 22, 2023) (considering an issue despite a Rule 27 violation where "the error in approach to record citation by Wife's Estate has not imposed meaningful prejudice to the [opposing party] or any meaningful burden upon this court"); *FedTrust Fed. Credit Union v. Brooks*, No. W2022-01119-COA-R3-CV, 2023 WL 3994520, at *2 (Tenn. Ct. App. June 1, 2023) (considering an issue where "the legal analysis is relatively straightforward, and we perceive no prejudice to [the opposing party] or the administration of justice from considering [appellant's] arguments despite her Rule 27 violations"); *City of La Vergne v. LeQuire*, No. M2016-00028-COA-R3-CV, 2016 WL 6124117, at *2 (Tenn. Ct. App. Oct. 19, 2016) (considering the appeal on the merits despite the violations of Rule 27 because the shortcomings of the brief did "not impede our ability to consider the merits of his argument on appeal" and the opposing party "does not contend that it would be unfairly prejudiced by our doing so"); *see also*, *e.g.*, *Total Garage Store, LLC v. Moody*, No. M2019-01342-COA-R3-CV, 2020 WL 6892012, at *6 (Tenn. Ct. App. Nov. 24, 2020) (declining to dismiss an appeal because, despite the fact that the appellant's violations of Rule 27 rendered his brief "not a model for record citation," the court nevertheless concluded that "Moody's brief is not so deficient throughout as to justify the heavy penalty of dismissal").

IV.

The Orusas argue on appeal that the award of summary judgment was in error because service of process was sufficient and because the bank's notice of the foreclosure by publication was insufficient due to failure to actually distribute the publication in the county. To prevail on appeal, the Orusas must prevail on both independent grounds underlying the trial court's decision to award summary judgment.

The summary judgment granted in this case began with a motion to dismiss from First National. Tennessee Rule of Civil Procedure 12.02 provides that when a party moves to dismiss for failure to state a claim upon which relief can be granted and includes matters outside the pleading that are considered by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Under Tennessee Rule of Civil Procedure 56.04, a court may grant a party summary judgment on a claim when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A motion for summary judgment "shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial," set forth in separate numbered

paragraphs and supported by citations to the record. Tenn. R. Civ. P. 56.03. A party seeking summary judgment who does not bear the burden of proof at trial "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). The evidence at a motion for summary judgment must be viewed in the light most favorable to the nonmoving party, with all reasonable inferences drawn in that party's favor. *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019). We review an order granting summary judgment de novo, with no presumption of correctness. *Id.* First National's motion to dismiss included claims under Rule 12.02(6), dismissal for failure to state a claim upon which relief can be granted, and the court properly considered these pursuant to summary judgment standards.

However, when the motion to dismiss is based on jurisdictional issues, such as failure of service of process, the court may consider matters outside the pleadings without converting the motion into one for summary judgment. *Meersman v. Regions Morgan Keegan Tr.*, No. M2017-02043-COA-R3-CV, 2018 WL 4896660, at *3 (Tenn. Ct. App. Oct. 9, 2018) (citing *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560, 561 n.1 (Tenn. 1981)); *Milton v. Etezadi*, No. E2012-00777-COA-R3-CV, 2013 WL 1870052, at *3 (Tenn. Ct. App. May 3, 2013) (concluding that, although the trial court considered matters outside pleadings, it properly treated a motion to dismiss for lack of service of process as a motion to dismiss rather than one for summary judgment). Such a defense can also be raised pursuant to summary judgment, so long as it has not been previously waived. *See Hall v. Haynes*, 319 S.W.3d 564, 584-85 (Tenn. 2010); *Eaton v. Portera*, No. W2007-02720-COA-R3-CV, 2008 WL 4963512, at *2 (Tenn. Ct. App. Nov. 21, 2008); *see also Nicholstone*, 621 S.W.2d at 561 n.1 (concluding that treating a motion to dismiss for lack of personal jurisdiction as a motion for summary judgment was harmless).[3] Here, the court notified the parties it would address the issue as a motion for

---

[3] This court has previously held that "[c]onsidering an appeal from a trial court's grant of a motion to dismiss for insufficiency of service of process, we view all factual allegations in the complaint as true and review the trial court's conclusions of law de novo with no presumption of correctness." *Davis v. Grange Mut. Cas. Grp.*, No. M2016-02239-COA-R3-CV, 2017 WL 4331041, at *2 (Tenn. Ct. App. Sept. 28, 2017). We note, however, that in many cases, the allegations from the complaint will have little bearing on the service issue. In *Davis*, the court noted that the trial court could properly consider matters outside the pleadings in deciding a motion to dismiss for lack of service of process. *Id.* A motion to dismiss for lack of service of process is analogous to a motion to dismiss for lack of personal jurisdiction. *See Meersman*, 2018 WL 4896660, at *3. In *Gordon v. Greenview Hospital, Inc.*, the Tennessee Supreme Court held that a trial court was not required to make findings of fact in a motion to dismiss for lack of personal jurisdiction, but rather was tasked with determining whether the plaintiff, through affidavits and allegations, had alleged a prima facie case of jurisdiction. 300 S.W.3d 635, 644 (Tenn. 2009). Dismissal is proper if the specific facts alleged by the plaintiff fail to establish a prima facie case of jurisdiction. *Id.* A trial court has the authority to allow limited discovery, hold an evidentiary hearing, or reserve such a motion for a trial on the merits. *Id.*; *see Braswell v. Graves*, No. W2004-00204-COA-R3-CV, 2004 WL 2609190, at *3

summary judgment, and both parties submitted materials in support of their arguments. Neither party objected to the trial court considering this matter under the applicable standards and procedures for summary judgment, and both parties have treated summary judgment as providing the appropriate standards for our review of this appeal. Accordingly, we review this issue as one decided under the summary judgment standard.

IV.

Turning to the service of process issue, under Tennessee Rule of Civil Procedure 4.04, service may be effected:

> Upon a domestic corporation, or a foreign corporation doing business in this state, by delivering a copy of the summons and of the complaint to an officer or managing agent thereof, or to the chief agent in the county wherein the action is brought, or by delivering the copies to any other agent authorized by appointment or by law to receive service on behalf of the corporation.

Tenn. R. Civ. P. 4.04(4). Outside the state, service may be effected "by any form of service authorized for service within this state." Tenn. R. Civ. P. 4.05(1)(a).[4]

These Rules are to be strictly construed. *See Hall*, 319 S.W.3d at 571. The purpose of these provisions is "to insure that process is served in a manner reasonably calculated to give a party defendant adequate notice of the pending judicial proceedings." *Garland v. Seaboard Coastline R. Co.*, 658 S.W.2d 528, 530 (Tenn. 1983). Service can be effected by certified mail. Tenn. R. Civ. P. 4.04(10) ("If the defendant to be served is an individual or entity covered by subparagraph (2), (3), (4), (5), (6), (7), (8), or (9) of this rule, the return receipt mail shall be addressed to an individual specified in the applicable subparagraph."); Tenn. R. Civ. P. 4.05(3) (when serving defendants out of state, "Service by mail upon a corporation shall be addressed to an officer or managing agent thereof, or to the chief agent in the county wherein the action is brought, or by delivering the copies to any other agent authorized by appointment or by law to receive service on behalf of the corporation."). Such service cannot support a default judgment unless the return receipt shows "personal acceptance by the defendant or by persons designated" by Rule or statute, or shows a refusal to accept. Tenn. R. Civ. P. 4.04(10); Tenn. R. Civ. P. 4.05(6).

---

(Tenn. Ct. App. Nov. 17, 2004) (trial court's factual findings in dispute as to whether the process server served the defendants individually or instead merely served a relative of the defendants were binding on the appellate court absent evidence to the contrary). A trial court's determination regarding whether the plaintiff has established a prima facie basis for the exercise of jurisdiction is reviewed de novo with no presumption of correctness. *Gordon,* 300 S.W.3d at 644.

[4] The Orusas cite Rule 4.05, while First National cites Rule 4.04. We note again that the appellate record does not reveal definitively where service was attempted. Regardless, as relevant here, both Rules contemplate service on an officer or managing agent.

The signatory to the return receipt must fall into the categories listed in the Rule governing service. *Hall*, 319 S.W.3d at 581 (citing Tenn. R. Civ. P. 4.03(2)). Furthermore, the service should be "upon a representative so integrated with the organization that he will know what to do with the papers," and "service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." *Garland*, 658 S.W.2d at 531 (quoting *Insurance Company of North America v. S/S "Hellenic Challenger"*, 88 F.R.D. 545, 547 (S.D.N.Y. 1980)) (concluding that service was proper upon a person the corporation acknowledged to be the chief agent in the county). "The rule on serving corporations through their authorized agents 'contemplates service on agents either expressly or impliedly appointed by the defendant organization as agents to receive process.'" *Hall*, 319 S.W.3d at 574 (quoting 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1101, at 557 (3d ed. 2002)). Acting as a corporation's agent for one purpose does not create agency for accepting service of process. *Hall*, 319 S.W.3d at 575-76; *see Arthur v. Litton Loan Servicing LP*, 249 F. Supp. 2d 924, 929 (E.D. Tenn. 2002) (concluding service was improper because plaintiffs did not refute an affidavit that the attorney served was not authorized to receive service of process, even though the attorney accepted the service). "[A]ctual notice of the lawsuit is not 'a substitute for service of process when the Rules of Civil Procedure so require.'" *Hall*, 319 S.W.3d at 564, 572 (quoting *Frye v. Blue Ridge Neurosci. Ctr., P.C.*, 70 S.W.3d 710, 715 (Tenn. 2002)).

While First National's statement of undisputed material "facts" in seeking summary judgment was inadequate, containing mainly legal conclusions rather than factual assertions, the Orusas' response establishes that Mr. Arthur was merely a loan officer who was making decisions about their loan. Furthermore, there is an absolute dearth of information regarding the identity of Mr. Loveless. The trial court found that the Orusas attempted to serve Mr. Arthur, "the chief loan officer who has been making the final decisions on this loan on behalf of [First National]," and that it was actually Mr. Loveless who signed the certified mail return receipt. The Orusas do not appear to dispute that the signatory was Mr. Loveless.

Furthermore, in this case, the Orusas have failed to meet their burden to provide a proper appellate record and have failed to meet their burden to show that Mr. Loveless was a proper agent for service of process, and accordingly they have not established jurisdiction. The Orusas, as the appellants, included no documents related to the service of process in the appellate record, even though the trial court relied on such documents in reaching its decision. Accordingly, the record contains nothing of these critical documents for this court to review regarding the manner of service of process or the return receipt upon which the trial court's decision turned and which are not part of the record before this court. This is problematic for the Orusas' appeal because "[p]arties have the responsibility to see to it that the record contains the evidence necessary to support their arguments on appeal." *Levine v. March*, 266 S.W.3d 426, 439 (Tenn. Ct. App. 2007). "More particularly,

the burden falls on the party asserting error: 'it is incumbent upon the *appellant* to provide a record that is adequate for a meaningful review.'" *Riddle v. Miclaus*, No. M2024-01335-COA-R3-CV, 2025 WL 1166481, at *2 (Tenn. Ct. App. Apr. 22, 2025) (quoting *Tanner v. Whiteco, L.P.*, 337 S.W.3d 792, 796 (Tenn. Ct. App. 2010) (emphasis added)).

Additionally, the Orusas did not demonstrate that either Mr. Loveless or Mr. Arthur was a proper party to receive service of process for First National. This court has previously held that the burden of showing that the summons was served on a person authorized to receive service for the defendant is on the plaintiff. *See Meersman v. Regions Morgan Keegan Trust*, No. M2017-02043-COA-R3-CV, 2018 WL 4896660, at *5 (Tenn. Ct. App. Oct. 9, 2018) ("The plaintiff has the burden of proving that the person he or she elected to serve is the defendant's authorized agent for service of process."); *Milton v. Etezadi*, No. E2012-00777-COA-R3-CV, 2013 WL 1870052, at *6 (Tenn. Ct. App. May 3, 2013) ("Mr. Milton provided no proof that Ms. Kate was Dr. Etezadi's authorized agent for receipt of service of process. Mr. Milton has the burden of proof on this issue." (citing *Eaton v. Portera*, No. W2007-02720-COA-R3-CV, 2008 WL 4963512, at *4 (Tenn. Ct. App. Nov. 21, 2008))); *Roberts on Behalf of Edwards v. Hinkle*, No. W2022-01714-COA-R3-CV, 2024 WL 1526541, at *5 (Tenn. Ct. App. Apr. 9, 2024) ("Mr. Edwards presented no evidence that Dr. Hinkle intended to confer upon Mr. Paden the specific authority to receive and accept service for him or that Mr. Paden had previously accepted service for Dr. Hinkle."); *but see Braswell v. Graves*, No. W2004-00204-COA-R3-CV, 2004 WL 2609190, at *2 (Tenn. Ct. App. Nov. 17, 2004) (in a circumstance in which an officer's return reflects proper service, "the burden is upon the party complaining of the service to show by clear and convincing proof that he or she was not served with process").

In *Meersman v. Regions Morgan Keegan Trust*, the plaintiff attempted to serve an attorney who had represented the bank in a prior lawsuit. 2018 WL 4896660, at *5 . This court held that service was not proper because the plaintiff failed to introduce evidence that the bank intended for the attorney, or for the courier who actually signed the return, to act as its agent for service of process. *Id.* at *5, 6 (noting the plaintiff had "failed to show any actions or acquiescence by [the bank] to prove [the attorney's] status as an agent" and had likewise "not offered any other evidence outside of the fact that the employee of the messenger service could sign for certified mail to prove the third party was an authorized subagent, which is insufficient evidence to prove agency for service of process under *Hall*").

Here, the Orusas, as the plaintiffs, bore the burden of showing that the summons was properly served on a person with authority to accept service for First National.[5]

---

[5] Nor is Tennessee alone in this regard, as it is generally understood that "the burden of showing the required agency is on the plaintiff." 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1101 (4th ed.); *see also, e.g.*, *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 624, 2004 WL 1630513 (6th Cir. 2004) (concluding that when the plaintiff had no evidence to support a finding that the entity served was a managing agent of the defendant, the action was properly dismissed);

- 10 -

However, the Orusas have not shown that Mr. Loveless was a proper person to receive service of process, or even that Mr. Loveless was employed by or an agent of First National. *See Hall*, 319 S.W.3d at 575-76, 581-84 (neither customer service employee nor clerk employed by a medical group had the authority to receive service of process when the documents were hand-delivered and also sent by certified mail addressed to the registered agent).

Accordingly, the Orusas have not shown that the trial court erred in concluding that Mr. Loveless was not authorized to receive service of process for First National. Without service of process, the court did not have personal jurisdiction over First National. *Turner v. Turner*, 473 S.W.3d 257, 271 (Tenn. 2015) ("A court obtains personal jurisdiction over a party defendant by service of process."). Accordingly, dismissal was proper due to lack of personal jurisdiction. We do not reach the trial court's alternative basis for granting summary judgment.

V.

Returning to the Rule 27 briefing deficiencies discussed above, First National contends those deficiencies rendered this appeal frivolous and, accordingly, requests damages. In seeking damages, First National relies upon Tennessee Code Annotated section 27-1-122, which provides as follows:

---

*Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990) (concluding that service was improper because "Santos has shown no basis for an inference that State Farm had authorized its attorneys to accept service of process on its behalf" but that the defendant waived any objection to service); *Walker v. Klise Mfg. Co.*, No. 3:18-CV-00477, 2020 WL 983087, at *4 (M.D. Tenn. Feb. 4, 2020), *report and recommendation adopted*, No. 3:18-CV-00477, 2020 WL 978682 (M.D. Tenn. Feb. 28, 2020) (concluding service was inadequate under Tennessee law because "without a description of Olvera's administrative duties and the extent of any supervisory obligations, the Court cannot infer that she had authority to receive service for Klise"); *Kornea v. J.S.D. Mgmt., Inc.*, 336 F. Supp. 3d 505, 509 (E.D. Pa. 2018) (burden is on plaintiff to show signatory was the defendant's authorized agent and the plaintiff provided no information regarding who the signatories were or what their relationship was to the defendant); *United States v. Resnick*, No. 05 CR 9, 2009 WL 10705461, at *2 (N.D. Ill. July 29, 2009) (the government presented no evidence that service was effected on a proper agent under Rule 4); *DASFortus Techs., LLC v. Precision Products Mfg. Co., Ltd. (Hong Kong)*, No. 3:07-CV-0866, 2008 WL 11388115, at *5 (M.D. Tenn. Nov. 10, 2008) ("[T]he evidence put forth by the plaintiff does not satisfy its burden of demonstrating the validity of the service. . . ."); *Wagner Int'l, LLC v. Mandal Alt Co., Ltd.*, No. CIV.A. 03-CV00195JLK, 2005 WL 1606900, at *4 (D. Colo. July 8, 2005) (concluding that without factual allegations tending to show that the defendant authorized the agent to accept service of process, there was insufficient service); *Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.*, 8 F. Supp. 2d 372, 376 (S.D.N.Y. 1998) ("The burden is on the plaintiff to show a basis for an inference that the defendant has authorized a particular person to accept service of process on its behalf."); *Elliott v. Verska*, 271 P.3d 678, 683-84 (Idaho 2012) (affirming the trial court's finding that the plaintiff did not meet the burden to establish that the party was an authorized agent for service of process for the defendant); *but see Northgate Vill. Apartments v. Smith*, 428 S.E.2d 381, 383 (Ga. Ct. App. 1993) (concluding "the burden is on the party asserting insufficiency of service of process to show that the person served was not his agent").

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

First National's brief only seeks damages on the basis of the Rule 27 briefing deficiencies and no other basis. Therefore, that is the only basis as to which the Orusas had an opportunity to respond, and the only basis for seeking damages pursuant to Tennessee Code Annotated section 27-1-122.

In opposition, in their reply brief, the Orusas defend noting that they are proceeding pro se and endeavoring to adhere to the Tennessee Rules of Appellate Procedure. They note that their deficiencies are minor and technical in nature. Having determined that the Rule 27 violations did not significantly hamper our review and have not prejudiced the appellee, we decline to deem those violations of Rule 27 a basis for awarding damages to the appellees.

## VI.

Based on the foregoing, we affirm the trial court's order granting judgment as a matter of law to First National. Costs of this appeal are taxed to the appellants, Abigail O. Orusa and Samson K. Orusa, for which execution may issue if necessary

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE